NORTON ET AL. V. A. P. PILGER ET AL.

[Filed December 22, 1890.]

1. **Chattel Mortgages:** RETENTION BY MORTGAGOR: FRAUD PRESUMED. A chattel mortgage, or bill of sale of personal property, not acccompanied by an immediate delivery and followed by an actual and continued change of possession of the property sold, mortgaged, or assigned, is presumed to be fraudulent and void as against subsequent purchasers in good faith; and when offered in evidence in an action between the person claiming under it and a subsequent purchaser in good faith, and for value, to be effective, must be accompanied by evidence on the part of the person claiming under such chattel mortgage, or bill of sale, that the same was made in good faith and without intent to defraud creditors or purchasers. A prior recording of the instrument will not supersede the necessity of such proof.

2. ———: FAILURE TO RECORD. Under the act of February 19, 1877, sec. 26, ch. 32, Comp. Stats., an unrecorded bill of sale, contract, or lease, wherein the transfer of title or ownership of personal property is made to depend upon any condition, is void only as against any purchaser or judgment creditor of the vendee or lessee in actual possession, obtained in pursuance of such sale, contract, or lease without notice. As to all other persons or parties, the law remains unaffected by the act, except in so far as it places conditional leases of personal property upon an equal footing with conditional sales.

ERROR to the district court for Madison county. Tried below before CRAWFORD, J.

*D. A. Holmes,* for plaintiffs in error, cited: *Aultman v. Mallory,* 5 Neb., 180; *Blunk v. Kelley,* 9 Id., 441; *McCormick v. Stevenson,* 13 Id., 72; *Gorham v. Holden,* 9 At. Rep., 894; *Germain v. Wind,* 13 Pac. Rep., 753; *Miles v. Edsall,* 14 Pac. Rep., 701; *McGinnis v. Savage,* 1 S. E. Rep., 746; *Campbell P. P. & M. Co. v. Walker,* 1 So. Rep., 59; *Faeth v. Leary,* 23 Neb., 270; *Loeb v. Milner,* 32 N. W. Rep., 209; *McConnell v. People,* 84 Ill., 585; *Sirrine v. Briggs,* 31 Mich., 444.

Norton v. Pilger.

*H. C. Brome, contra,* cited: *Heryford v. Davis* 102 U. S., 235; *Everett v. Buchanan,* 2 Dak., 249; *Cartelyou v. Lansing,* 2 Caines Cases, [N. Y.], 202; *Dykers v. Allen,* 7 Hill [N. Y.], 497; *Wilson v. Little,* 2 N. Y., 443; *Lewis v. Graham,* 4 Abb. Pr. [N. Y.], 106; *Warner v. Martin,* 11 How. [U. S.], 225; *Newbold v. Wright,* 4 Rawle [Pa.], 195; *Buckley v. Packard,* 20 Johns. [N. Y.], 421; *Rodriguez v. Heffernan,* 5 Johns. Ch. [N. Y.], 429.

COBB, CH. J.

The plaintiffs below brought their action in replevin on April 30, 1887, in the district court of Madison county, alleging that they are the owners and entitled to the immediate possession of all the machinery, presses, type, and printing material of the Norfolk Printing Company, not incorporated; that the defendants wrongfully detain the same, and have so detained the said goods and chattels for two days, to the plaintiff's damage $1,200.

The defendants Norton, Sprecher, and Bell answered by a general denial.

There was a trial to a jury, with verdict for the plaintiffs, that the right of possession of the property at the commencement of this action was in the plaintiffs, and assessing their damages for the wrongful detention thereof at one cent.

The defendants' motion for a new trial was overruled, and judgment entered on the verdict, to which the defendants excepted; and in their petition in error to this court assigned:

"I. That the court erred in overruling the objections of defendants to the introduction of testimony offered by plaintiffs.

"II. In instructing the jury to return a verdict for the plaintiffs.

"III. In overruling the motion of defendants to in-

struct the jury to return a verdict at the close of the testimony in chief."

It appears from the record that in April, 1886, one Frank A. Sharpe, of Fremont, Dodge county, was in possession of certain printing presses and printing material, and on April 13 executed to the firm of Marder, Luse & Co., of Chicago, a chattel mortgage on the property to secure an indebtedness of $500 with interest; that in the fall of that year Sharpe removed the mortgaged property to Norfolk, Madison county, and had the chattel mortgage also recorded there. At this time Sharpe and George B. Van Voart, of Norfolk, entered into partnership under the name of the Norfolk Printing Company, contemplating an incorporation of their company, which was not effected; also, at this time, Sharpe went to Chicago and obtained from Marder, Luse & Co. two additional printing presses, a three horse-power engine and boiler, and other material for a more complete printing, binding, and stereotyping establishment, of the value of $3,422.52, which was shipped to the Norfolk Printing Company, at Norfolk, Nebraska, with directions to deliver the consignment to Sharpe. At the time of the delivery to Sharpe he executed to Marder, Luse & Co. the following instrument:

"NORFOLK, NEB., October 2, 1886.

"Mr. Frank A. Sharpe borrowed and received of Marder, Luse & Co., 139 and 141 Monroe Street, Chicago, Ill., the following articles in good order: If the prices set against them are paid as per memorandum below, the property is then to belong to said borrower, otherwise it remains the property of Marder, Luse & Co. Notes and drafts, if given, are not to be considered payments until they are paid.

"In the meantime the borrower is to keep the property in good order, and agrees to pay the price as per memorandum below, keeping the property sufficiently insured for the benefit of the said Marder, Luse & Co., depositing

the policy of insurance with them, and may use the property free from any other charge. Said property is not to be removed from Madison county, Nebraska, without the written consent of Marder, Luse & Co. Should said borrower fail to meet any of the payments at the time specified, or to keep the property satisfactorily insured, or in good order, then Marder, Luse & Co. may take the said articles and dispose of them to the best advantage, rendering to said borrower all surplus, if any, after paying the price agreed upon, and the expense of removal and sale.

"MEMORANDUM OF PAYMENTS TO BE MADE.

| | |
|---|---|
| Thirty days after date ................ | $200 and 8 per cent |
| Sixty days after date................... | 200 and 8 per cent |
| Four months after date............... | 100 and 8 per cent |
| Five months after date................ | 100 and 8 per cent |
| Six months after date.................. | 100 and 8 per cent |
| Seven months after date.............. | 100 and 8 per cent |
| Eight months after date............... | 100 and 8 per cent |
| Nine months after date................ | 100 and 8 per cent |
| Ten months after date.................. | 100 and 8 per cent |
| Eleven months after date............. | 100 and 8 per cent |
| Twelve months after date............. | 100 and 8 per cent |
| Thirteen months after date.......... | 100 and 8 per cent |
| Fourteen months after date........... | 100 and 8 per cent |
| Fifteen months after date............. | 100 and 8 per cent |
| Sixteen months after date............. | 100 and 8 per cent |
| Seventeen months after date.......... | 100 and 8 per cent |
| Eighteen months after date........... | 100 and 8 per cent |
| Nineteen months after date........... | 100 and 8 per cent |
| Twenty months after date............ | 100 and 8 per cent |
| Twenty-one months after date........ | 100 and 8 per cent |
| Twenty-two months after date....... | 100 and 8 per cent |
| Twenty-three months after date...... | 100 and 8 per cent |
| Twenty-four months after date...... | 100 and 8 per cent |

Total .........................$2,525."

Then follows "a memorandum of articles borrowed" and the signature of Frank Sharpe, witnessed by Amos Dresser, the agent of Marder, Luse & Co., and James Hawkins. It

appears from the evidence that promissory notes were given by Sharpe to Marder, Luse & Co. for each of the payments recited in this instrument. It was filed in the county clerk's office of Madison county February 11, 1887.

This property, as well as that brought to Norfolk from Fremont the spring before, was in the possession and use of Sharpe & Van Voart, otherwise known as the Norfolk Printing Company. On December 23, 1886, an instrument had been executed by Sharpe & Van Voart for the printing company, signed by T. H. Egbert and A. P. Pilger, as follows:

"That the Norfolk Printing Company, in consideration of $1,000, paid by A. P. Pilger and P. Schwenk & Co., have sold, and by these presents do sell and convey, to said A. P. Pilger and P. Schwenk & Co. all the right, title, and interest of said printing company in and to all machinery, presses, type, and printing material now in possession of and owned by said printing company, at Norfolk, Nebraska, a partial list of the property conveyed being hereto attached.

"It being understood and agreed by and between the parties that this conveyance is made subject to first lien upon said property of $2,000 in favor of Marder, Luse & Co.

"It being further agreed that if said Norfolk Printing Company shall at any time pay to said A. P. Pilger and P. Schwenk & Co. said sum of $1,000, together with any additional sum or sums that may at the time of such payment be due from said Norfolk Printing Company to said A. P. Pilger and P. Schwenk & Co., then, and in that event said Pilger and Schwenk & Co. agree to sell and convey said property to Norfolk Printing Company.

"Witness our hands at Norfolk, Nebraska, December 23, 1886.　　　　　　　　NORFOLK PRINTING CO.,

"By FRANK SHARPE.

"GEO. B. VAN VOART.

"T. H. EGBERT.

"A. P. PILGER."

This instrument is duly certified to have been placed on file in the clerk's office of Madison county January 21, 1887.

It appears that Sharpe & Van Voart, otherwise the Norfolk Printing Company, were in possession of the property at the time of the execution of the last instrument, and remained in possession during some part of 1887, but up to what date does not appear. But at some time in that year Sharpe transferred his interest to Van Voart, and shortly afterwards left Norfolk, and at the time of the trial had disappeared. It further appears that about April 28, 1887, after Sharpe had left, Van Voart, being the only representative of the printing company and in possession of the property, delivered it to Marder, Luse & Co., who sold and delivered it to the plaintiffs in error (the defendants below), from whom the goods and chattels were replevied, and delivered a bill of sale to them which was in evidence; that Norton, Sprecher, and Bell, the plaintiffs in error, took possession of the property and were in possession under Marder, Luse & Co. on April 30, 1887, when this action was commenced and the order of replevin executed.

There are several important questions presented and argued by counsel on either side, but it is not deemed strictly necessary to follow them, as it is believed that the first argument presented by the plaintiffs in error is conclusive of other questions in the case.

The instrument introduced by the plaintiffs below on the trial, although designated and indorsed as a bill of sale is, in law, a chattel mortgage executed by the Norfolk Printing Company, but without witnesses, to secure the payment of $1,000 to the defendants in error. It is apparent from its terms that it was not intended there should be an immediate delivery, or any change of possession, of the property from mortgagors to mortgagees. And there is an entire absence of evidence by the plaintiffs in the court below of any delivery of the property by the Norfolk Printing

55

Company to the plaintiffs, or of any change of possession until taken by Marder, Luse & Co. and turned over to the defendants in the court below; nor is there any evidence, except the instrument itself, of its primal character, that it was made in good faith or for an actual consideration. The case therefore falls within the meaning of sec. 11, chap. 32, of our statutes, cited by counsel for plaintiffs in error, which provides that "every sale, * * * unless accompanied by immediate delivery, and be followed by an actual and continued change of possession of the things sold, mortgaged, or assigned, shall be presumed to be fraudulent and void as against subsequent purchasers in good faith, and shall be conclusive evidence of fraud, unless it shall be made to appear, on the part of the persons claiming under such sale, that the same was made in good faith and without any intent to defraud such creditors or purchasers."

It is the contention of the defendants in error that the instrument executed by Sharpe on October 2, 1886, and herein set out, is in legal effect a chattel mortgage, and counsel cite very high authority in support of the argument. But I do not agree that the case cited, that of *Heryford v. Davis*, 102 U. S. S. C. R., 235, can be followed under our statutes and decisions. In the case of *Aultman, Miller & Co. v. Mallory*, 5 Neb., 180, it was held that "A sale and delivery of goods on condition that the property is not to vest until the purchase money is paid or secured, does not pass the title to the vendee until the condition is performed." This opinion was delivered at the July term, 1876. It was there contended, by the defendants in error, that while the selling and delivering of the property in controversy upon the condition that the title does not pass from the vendor until the purchase price was paid, might be good, and the condition sustained as between the original parties, yet, as between creditors of the vendee or innocent purchasers, it was fraudulent, and was contrary to public policy; but as the law of the state then was, al-

though there was nothing on record to show the conditional character of the sale, and it appeared by stipulation that the defendant in error had no actual notice thereof, the court was of a different opinion and expressed it decisively in the decision.

The legislature, then about to convene, passed an act to prevent the fraudulent transfer of personal property, which was approved February 19, 1877, providing in sec. 1: "That no sale, contract, or lease, wherein the transfer of title or ownership of personal property is made to depend upon any condition, shall be valid against any purchaser or judgment creditor of the vendee or lessee, in actual possession, obtained in pursuance of such sale, contract, or lease, without notice, unless the same be in writing, signed by the vendee or lessee, and a copy thereof filed in the office of the clerk of the county within which such vendee or lessee resides; said copy shall have attached thereto an affidavit of such vendor or lessor, or his agent or attorney, which shall set forth the names of the vendor and vendee or lessor and lessee, a description of the property transferred, and the full and true interest of the vendor or lessor therein. All such sales and transfers. shall not remain valid against purchasers in good faith, or judgment or attaching creditors, without notice, for a longer period than one year, unless such vendor or lessor shall, within thirty days prior to the expiration of one year from the date of such sale or transfer, file a copy thereof, verified as aforesaid, in the office of said clerk, and the said vendor or lessor may preserve the validity of his said sale or transfer of personal property by an annual refiling, in the manner as aforesaid, of such copy."

It was the evident intention of the legislature to place conditional leases of personal property upon the same footing with those of conditional sales, as held in *Aultman, Miller & Co.'s Case, supra;* but applying the statute to the present case, if the defendants in error were purchasers, or

judgment creditors, of the lessees without notice, then the lease was void as to them. It is not contended that they were judgment creditors; and were they purchasers? They cannot be held to be purchasers because, as we have seen, no possession of the property passed to them, nor was it made to appear, on their part, that the sale to them was in good faith, and without intent to defraud other creditors or purchasers. But if the plaintiffs were purchasers, they certainly were not purchasers without notice, as by reference to the bill of sale, a copy of which is herein set out, it will be seen that the same was taken expressly "subject to the first lien upon said property of $2,000 in favor of Marder, Luse & Co."

There being, then, neither judgment creditor nor purchaser without notice whose rights were to be affected by the failure of Marder, Luse & Co. to file their lease, or a copy thereof, in the office of the county clerk, as provided by law, the only effect which the statute of 1877 had upon their lease was to recognize it, and place it on a footing with conditional sales, as we have shown. And although the trial was in a manner at arms length on either side, it nevertheless appears from the whole proceedings that the firm of Marder, Luse & Co. acted in entire good faith towards other parties; that it furnished an amount of valuable machinery to Sharpe & Van Voart, for the Norfolk Printing Company, allowed them the possession and use of it until Sharpe had abandoned his printing enterprise, had left the town and county, and probably the state. Then Van Voart, who remained the only representative of the printing company, recognizing the property rights of Marder, Luse & Co., delivered the property to them, who sold it again to the plaintiffs in error.

It has been stated that this sale was by the consent of Van Voart, the sole representative of the Norfolk Printing Company at the time. It is probably more exact, in the light of the closing testimony of Sprecher, one of the

Norton v. Pilger.

plaintiffs in error, to say that the sale was made jointly by the Chicago firm and the Norfolk Printing Company, represented by Van Voart, and while I am of the opinion that the whole evidence, of record, shows good faith on the part of the plaintiffs in error, yet it is noticeable that neither Norton nor Sprecher, who testified for themselves, stated how much they gave for the property. Sprecher does say, in his closing testimony, that they assumed the notes and mortgage of the Norfolk Printing Company, and assumed to pay off the wages of Van Voart's printer, so he could go away.

Amos Dresser, a witness for defendants, testified that at the time of the transfer of the property by Marder, Luse & Co. to defendants there were the amounts of $275 and $28.65 due upon the notes and mortgage given by Sharpe at Fremont. This witness also testified that he was a clerk in the employ of Marder, Luse & Co., and was in charge of the credit business of the firm, and that $200, and no more, had been paid upon the material embraced in the lease.

On the other hand, it is significant that while Dr. Schwenk, one of the plaintiffs below, and defendants in error, was twice examined as a witness on behalf of the plaintiffs, and testified as to various matters, he did not testify, nor was he interrogated by counsel, as to the consideration for the bill of sale or chattel mortgage under which he claimed the goods, nor did he disclose any consideration whatever for the same.

Upon the whole aspect of the trial, I think the court erred in its instruction to the jury to find for the plaintiffs, and therefore there should be a new trial. Judgment is

REVERSED AND REMANDED.

THE other judges concur.