## CAMPBELL PRINTING PRESS & MANUFACTURING COMPANY V. ELLA M. DYER ET AL.

FILED JANUARY 21, 1896.   No. 5980.

1. **Sales:** ESTOPPEL.   A purchaser cannot successfully assert a greater interest in personal property than his vendor had, unless the real owner of the property, by his conduct, has estopped himself from asserting his title to the chattel.

2. **Conditional Sales.**   A contract for the sale of personal property upon condition that the title is to remain in the vendor until the purchase price is paid is valid as between the parties, and valid as against third parties dealing with the property without notice, unless such third parties are purchasers, judgment or attaching creditors of the conditional vendee.

3. **Chattel Mortgages:** SALES.   A mortgagee of a conditional vendee in possession of chattels is not a purchaser within the meaning of section 26, chapter 32, Compiled Statutes.

4. **Conditional Sales:** CHATTEL MORTGAGES: REPLEVIN.   A contract between a manufacturing company and a printing company provided: "The manufacturing company hereby agrees to sell at the sum of $—— to the printing company [a printing press, described] to be delivered, boxed, on cars at its factory * * * warranted free from defects of material and manufacture. * * * The printing company hereby agrees to buy such presses * * * and to pay therefor, on receipt of bill of lading of same, cash $——, and the balance in payments, evidenced by purchaser's notes. * * * The title to the said property shall remain in the seller until the purchase price with interest has been fully paid, and in case of any default in any of the terms of this contract the seller shall have the right to take immediate possession of said property." The presses were received by the printing company, put up, and used in its business, but it did not make the cash payment nor execute the notes as agreed.   The printing company subsequently pledged

these presses by a chattel mortgage to a bank to which it was indebted. The bank duly filed its mortgage and took actual possession of the presses. In an action of replevin by the manufacturing company against the bank, *held*, (1) that the printing company never acquired any title to the presses, and by its default had forfeited its right to their possession as against the manufacturing company; (2) that the manufacturing company was entitled to the possession of the presses as against the bank.

ERROR from the district court of Douglas county. Tried below before KEYSOR, J.

*Breckenridge, Breckenridge & Crofoot*, for plaintiff in error, cited: *Davis v. Giddings*, 30 Neb., 209; *Dows v. Kidder*, 84 N. Y., 121; *Tyler v. Freeman*, 3 Cush. [Mass.], 261; *Whitney v. Eaton*, 15 Gray [Mass.], 225; *Adams v. O'Connor*, 100 Mass., 515; *Hirschorn v. Canney*, 98 Mass., 149; *Stone v. Perry*, 60 Me., 48; *Seed v. Lord*, 66 Me., 580; *Hodgson v. Barrett*, 33 O. St., 63; *Paul v. Reed*, 52 N. H., 136; *Pond Machine Tool Co. v. Robinson*, 37 N. W. Rep. [Minn.], 99; *Briggs v. Ewen*, 42 N. W. Rep. [Ia.], 303; *Empire State Type Foundry Co. v. Grant*, 21 N. E. Rep. [N. Y.], 49; *Ballantyne v. Appleton*, 20 Atl. Rep. [Me.], 235; *Thorpe v. Fowler*, 57 Ia., 541; *Mathewson v. Belmont Flouring Mills Co.*, 76 Ga., 359.

*Hall, McCulloch & Clarkson, contra*, cited: Morse, Banks & Banking, sec. 111; Wade, Notice, sec. 683; *Pringle v. Dunn*, 37 Wis., 451.

*Clinton N. Powell* and *Howard B. Smith*, also for defendants in error.

RAGAN, C.

In February and May respectively, 1890, the Campbell Printing Press & Manufacturing Company, a corporation domiciled in the state of Massachusetts, and hereinafter called the "Manufacturing Company," and the Western

Printing Company, a corporation domiciled in the city of Omaha, and hereinafter called the "Printing Company," entered into two contracts in writing, substantially alike, and the terms of which, so far as material here, were as follows:

"The Manufacturing Company hereby agrees to sell at the sum of $—— to the Printing Company [here follows in each contract a description of a printing press], to be delivered, boxed, on cars at its factory in Massachusetts, * * * warranted free from defects of material and manufacture. * * * The Printing Company hereby agrees to buy said press as within specified, and to pay therefor, on receipt of bill of lading of same, cash $——, and the balance in payments, evidenced by purchaser's notes of even date with said bill of lading and bearing six per cent interest, as follows: [here follows the amount of each note, the time it is to run and by whom the notes are to be indorsed], the purchaser to deliver the said notes with the cash; the seller to send erector to superintend erection of press, paying for erector's time, hotel bills, and all traveling expenses.

"It is further agreed that the title to the said property shall remain in the seller until the purchase price with interest has been fully paid, and in case of any default in any of the terms of this contract the seller shall have the right to take immediate possession of said property."

Soon after the making of said contracts, the printing presses mentioned in said contracts were shipped to the Printing Company at Omaha, and it received them and put them up in its printing house and used them in its printing business. The Printing Company did not make the cash payments, nor execute the notes as agreed. No copy of either of these agreements was filed in the office of the county clerk of Douglas county. In August, 1890, the Printing Company executed to the Omaha National Bank and Ella M. Dyer two chattel mortgages upon the

printing presses to secure debts amounting to about $20,000 owing by the Printing Company to the bank and Dyer. The mortgagees filed their mortgages in the office of the county clerk of Douglas county and immediately took possession of the mortgaged property. Some weeks after this the Manufacturing Company instituted this suit—an action in replevin—in the district court of Douglas county against the bank and Dyer for the printing presses. The Manufacturing Company based its action on the contracts quoted above, claiming that inasmuch as the Printing Company had never paid the purchase price of the presses that the title to them had never passed to the Printing Company, and that by reason of its failure to execute the notes and make the cash payments agreed, it, the Manufacturing Company, was entitled to possession of the presses. The bank and Dyer claimed to be innocent mortgagees of the property from the Printing Company without actual notice of the contract existing between the Manufacturing Company and the Printing Company. At the close of the evidence the jury, in obedience to an instruction of the district court, returned a verdict in favor of the bank and Dyer, upon which the court rendered a judgment that the Manufacturing Company return the presses to them or pay them $1,500 in money, the stipulated value of the presses. To reverse this judgment the Manufacturing Company prosecutes to this court a petition in error.

For the purposes of this opinion we assume that neither the bank nor Dyer had any actual notice of the existence of the terms of the contract between the Manufacturing Company and the Printing Company, and there is no claim made that any copy of either of these contracts was ever filed in the office of the county clerk of Douglas county. Section 26, chapter 32, Compiled Statutes, provides: "That no sale, contract, or lease wherein the transfer of title or ownership of personal property is made to depend upon any condition shall be valid against any

purchaser or judgment creditor of the vendee or lessee in actual possession obtained in pursuance of such sale, contract, or lease without notice, unless the same be in writing signed by the vendee or lessee, and a copy thereof filed in the office of the clerk of the county within which such vendee or lessee resides," etc. The contract between the Manufacturing Company and the Printing Company was and is one wherein the transfer of title of personal property is made to depend upon a condition, namely, the payment by the Printing Company of the purchase price of the presses. The bank and Dyer obtained their mortgages upon these presses from the Printing Company, the conditional vendee, while it was in the actual possession of the presses. If the bank and Dyer had purchased from the Printing Company while it was in possession, or if the bank and Dyer claimed a title to or lien upon these presses by reason of their being judgment creditors of the Printing Company, then it is clear that they would be protected by the statute just quoted; but is a mortgage of personal property made by a conditional vendee in possession thereof within the statute? It will aid us in answering this question to ascertain what the rights of the parties to this contract were between themselves, and what the rights were of third persons dealing with this property without notice, prior to the enactment of the statute just quoted.

In *Aultman, Miller & Co. v. Mallory*, 5 Neb., 178, Aultman, Miller & Co. had sold to one Johnson a mower, taking from him in payment thereof a note which provided that the title to the mower should remain in Aultman & Co. until the note was paid. A judgment creditor of Johnson's levied an execution upon the mower and Aultman & Co. replevied it. The court said: "A sale and delivery of goods on condition that the property is not to vest until the purchase money is paid or secured, does not pass the title to the vendee until the condition is performed,"—and accordingly held that the title to the mower remained in

Aultman & Co.  This decision is based upon the correct principle that one cannot successfully assert a greater interest in personal property than his vendor had, unless the real owner of the property by his conduct has estopped himself from asserting his title to the chattel.  Applying the doctrine of this case to the contract under consideration it is evident, in the absence of statute, that as between the Manufacturing Company and the Printing Company the title to these presses could only pass to the Printing Company upon the full payment of their purchase price.  The case just cited is an adjudication in this state that the rule of *caveat emptor* applies to sales of personal property ; that though one may purchase personal property from another in the actual possession thereof,—purchase it in good faith for a valuable consideration and with the honest belief that the property belongs to the vendor,—yet he will make such purchase at his peril and take only such title as his vendor has.

The doctrine of *Aultman, Miller & Co. v. Mallory, supra,* was before this court in *McCormick v. Stevenson,* 13 Neb., 70, *Norton v. Pilger,* 30 Neb., 860, *Peterson v. Tufts,* 34 Neb., 8, and *McClelland v. Scroggin,* 35 Neb., 536; and in all of these cases the rule, announced in the Aultman-Miller case, that a contract for the sale and delivery of personal property, upon condition that the title should remain in the vendor until the purchase price was paid, was a valid contract as between the parties and binding upon third parties dealing with the property with notice of the agreement between the conditional vendor and vendee, was approved. The Aultman case was decided at the July, 1876, term, and on January 1, 1877, the legislature convened and passed the statute (sec. 26, ch. 32) quoted above.  This statute was in effect a legislative command that the decision in the Aultman case should no longer be the law of this state so far as judgment and attaching creditors and purchasers without notice were concerned; but did the legislature intend that

this provision of the statute should extend to the protection of a mortgagee of a conditional vendee? If it did, it has not said so either expressly or by implication. We must presume that the members of the legislature of 1877 were familiar with the fact that bankers and others were constantly lending money on chattel security; and yet with the decision of the Aultman case before it the legislature in effect said that a contract for the sale of personal property upon condition that the title is to remain in the vendor until the purchase price is paid shall remain valid in this state, as declared by the supreme court, except where third parties dealing with the property without notice are purchasers or judgment or attaching creditors. The temptation is very strong to read into this statute the word "mortgagee," but in this instance our duty does not coincide with our inclination. We are forced to the conclusion that had it been the intention of the legislature that said statute should afford protection to a mortgagee of a conditional vendee or lessee, it would have said so in express terms. (*Steele v. Spencer*, 1 Pet. [U. S.], 550.) We are strengthened in this conclusion by an examination of section 14, chapter 32, Compiled Statutes, which provides that a conveyance of chattels intended to operate as a mortgage shall be void as against creditors, subsequent purchasers, and mortgagees in good faith. This thought seems also to have been present in the mind of COBB, C. J., when writing the opinion in *Norton v. Pilger, supra.* It follows that the judgment of the district court must be reversed and the cause remanded.

REVERSED AND REMANDED.