NATIONAL CORDAGE COMPANY V. ALEXANDER SIMS ET AL.

FILED MARCH 5, 1895. NO. 6317.

1. **Conditional Sales:** RECORD. The design of the provision of section 26, chapter 32, Compiled Statutes, requiring conditional sales of personal property to be in writing and filed with the county clerk in order to be valid as against purchasers and judgment creditors, is to notify third persons, who might otherwise be defrauded, that the title thereof remains in the vendor.

2. ——: ——. Said provision has no application where the relation of vendor and vendee does not exist.

3. **Agency.** Where a contract provides for the consignment of goods to be sold on commission for prices fixed by the consignor and returns at stated periods, the consignee guarantying payment thereof, the relation which the law implies is that of an agency for sale upon a *del credere* commission; and not that of vendor and vendee.

4. ——: FACTORS AND BROKERS. The relation of a factor for the sale of goods is that of a trustee for his principal with respect to the property entrusted to him.

5. ——: ——. Property in the possession of a factor to be sold for the benefit of his principal is not liable to execution or attachment in satisfaction of the debts of the former.

6. ——: CONSTRUCTION. Agreement, set out in the opinion, *held,* not a conditional sale but to create a *del credere* agency only.

ERROR from the district court of Cuming county. Tried below before NORRIS, J.

*Uriah Bruner*, for plaintiff in error.

*T. M. Franse* and *P. M. Moodie, contra,* cited, contending that the property was subject to attachment as Yoder's: *Forrest v. Nelson*, 108 Pa. St., 481; *Peck v. Heim*, 17 Atl. Rep., [Pa.], 984; *Carleton v. Sumner*, 4 Pick. [Mass.], 516; *Dresser Mfg. Co. v. Waterston*, 3 Met. [Mass.], 18; *Mixer v. Cook*, 31 Me., 340; *Bowen v. Burk*, 13 Pa. St., 146; *Scudder v. Bradbury*, 106 Mass., 427; *Barry v. Palmer*, 19 Me., 303; *Fuller v. Bean*, 34 N. H., 290, 303.

POST, J.

This was an action of replevin in the district court for Cuming county, by which the plaintiff below, plaintiff in error, the National Cordage Company, sought to recover possession of 9,100 pounds of binder twine. The facts essential to an understanding of the questions presented for determination are as follows: On the 7th day of June, 1891, the plaintiff appointed one B. Y. Yoder agent for the sale on commission of its binder twine at West Point, in said county. During the season of 1891 about 20,000 pounds of twine were consigned by the plaintiff to Yoder for sale under the terms and conditions of his agency, and the property now in controversy is the portion thereof undisposed of at the close of that season. The several defendants claim through an order of attachment issued by A. Briggs, a justice of the peace for Cuming county, in an action by L. E. Chubbuck as plaintiff and against B. Y. Yoder as defendant. The appointment above mentioned is in writing and is here set out:

"The National Cordage Co. of New York City and Chicago, Ill. (a corporation organized under the laws of the state of New Jersey), does hereby appoint B. Y. Yoder to be its agent at West Point, in the county of Cuming, state of Nebraska, for the sale of binder twine for and dur-

ing the season of 1891 only. And said agent hereby contracts and agrees to do and perform as follows:

"1st. To keep on hand, in proper season, whatever twine may be required at West Point aforesaid, during said season, and to sell or be interested in the selling of no twine whatever except that obtained from The National Cordage Co. so long as the said company can furnish the same.

"Non-compliance by said agent with these provisions, forfeits all commission or remuneration for services rendered which may be or may become due said agent under this contract, in addition to such damages as may be allowed by law.

"2d. All such twine shall be sold for cash on delivery, at the following prices, and said agent hereby orders shipment to be made by The National Cordage Co. at once:
5,000 lbs. sisal binder twine, at 11 cts. per lb. gross weight.
6,000 lbs. S. D. manilla binder twine, at $13\frac{1}{2}$ cts. per lb. gross weight.
6,000 lbs. pure manilla binder twine, at $14\frac{1}{2}$ cts. per lb. gross weight.
And said agent shall pay all freight and transportation charges from Omaha on all twine ordered under this contract.

"3d. All money received by said agent, accruing from the sale of such twine, shall be and shall remain the property of said The National Cordage Co., and all such twine shall be and remain the property of said The National Cordage Co., until sold pursuant to the terms and conditions of this contract.

"4th. Said agent shall promptly remit to The National Cordage Co., at Chicago, Ill., on the first day of each month, and whenever requested at other times, all moneys received for twine sold under this contract, and shall make no deduction therefrom, and have no lien or interest on, in, or to any money so received. And a failure to so remit shall not be waived by any person whomsoever, nor shall a de-

mand therefor be necessary, or a failure to demand be construed as a waiver of this condition.

"5th. No twine shall be delivered by said agent to any person or persons, or corporation, except upon a *bona fide* sale of the same for cash.

"6th. If any twine ordered by said agent under this contract shall remain on hand in original packages at the close of the season, to-wit, on Sept. 1st, 1891, said agent shall keep said twine safely stored in some dry and secure place until August 1, 1892, and shall keep the same continually insured in some responsible insurance companies, in the name of The National Cordage Co., to the amount of invoice price, at all times subject to the order of The National Cordage Co., free of charge for storage, insurance, or local taxes, and shall have no claim against said The National Cordage Co. for freight and transportation charges paid by said agent on such twine, and shall deliver the same at the nearest railroad depot without charge, on demand.

"7th. In consideration of the faithful performance of all the above conditions, The National Cordage Co. hereby agrees to use its best endeavors to supply all twine ordered during said season by said agent, and to pay said agent as his commission, in cash, at settlement, on or after Sept. 1st, 1891, a sum equal to $2\frac{3}{4}$ cents per pound for all twine sold in conformity with this contract.

"8th. But if the said agent sells and settles for all twine received by him, in cash, and the money is received by said The National Cordage Co., in Chicago, on or before Nov. 1, 1891, a further commission of $\frac{1}{4}$ cent per pound is to be paid said agent; otherwise this provision to be void and of no effect.

"9th. The said agent agrees, at his own expense, to insure all twine immediately upon its receipt by him, to the amount of invoice price, in responsible insurance companies in the name of The National Cordage Co., and to keep the same continually insured, while said twine remains in his possession.

"10th. It is mutually agreed by the parties hereto that this contract cannot be changed in any of its provisions by any one in the employment of The National Cordage Co., nor will any promises or agreements, either written or verbal, be binding upon the said The National Cordage Co., until approved by one of its officers or manager.

"Dated at West Point this 7th day of July, A. D., 1891.

"THE NATIONAL CORDAGE CO.,

"By H. W. VAN SICKEL,

"*Special Agent.*

"B. Y. YODER.

"Approved: THE NATIONAL CORDAGE CO.,

"By B. TIMMEM."

On the 13th day of October, 1891, Mr. Van Sickel, the plaintiff's agent, visited West Point, when an invoice was taken, showing twine on hand as follows: sisal, 5,250 pounds; S. D., 3750 pounds; manilla, 100 pounds; total, 9,100 pounds. On the 1st day of November following Yoder settled for the twine sold, giving in part payment therefor two notes of $400 each, signed by Joseph Faunigle, and which at the date of the trial of this cause were still unpaid. Reference is here made to the Faunigle notes for the reason that they are claimed by defendants to have been received in satisfaction for the twine in controversy, from which it is argued that the title to said property thereby passed to Yoder and that it was accordingly liable to be attached on process against him; but for that contention we can perceive no foundation in the record. It is clearly established by the undisputed evidence of Van Sickel, as well as by the statement of the account with Yoder, that the consideration for said notes was the twine sold, and not that on hand at the date of settlement. But the real controversy is with respect to the character of the transaction between Yoder and the plaintiff company. It is strenuously insisted by the defendant that the evidence discloses a mere conditional sale of the twine, which, not hav-

ing been filed in the office of the county clerk in accordance
with the provisions of section 26, chapter 32, Compiled
Statutes, must be held void as against attaching creditors.
The distinction between conditional sales and consignments
of personal property is frequently overlooked by text-writers
as well as judges.    Perhaps no sounder definition of a con-
ditional sale is to be found in the books than that approved
by Mr. Newmark in his valuable work on the Law of
Sales, section 19: "Whenever it appears from the contract
between the parties that the owner of personal property has
transferred the possession thereof to another, reserving to
himself the naked title thereof, solely for the purpose of
securing payment of the price agreed upon between them,
the contract is necessarily a conditional sale and not a bail-
ment." Such an agreement is obviously within the provis-
ions of our registration laws, and must be filed in order to
protect the seller against purchasers and execution creditors
without notice of the vendee in possession.    The manifest
purpose of the statute in providing for the filing of the
contract is to notify third parties that the title of the prop-
erty remains in the vendor, and to thus protect persons
who might otherwise be defrauded. (*Dyer v. Thorstad*, 35
Minn., 534.) And that it contemplates cases only in which
the relation of vendor and vendee exists,—that is, where
the title to the property involved is intended to pass from
one party to the other upon the performance of the condi-
tions named,—is apparent from the act itself.    The law
implies a mere consignment of goods for sale upon a *del
credere* commission, and not a sale thereof where the
contract provides that the consignee shall receive them
and return periodically to the consignor the proceeds of
sales at prices charged by the latter, the consignee guar-
antying payment therefor. (Mechem, Agency, 14, 986*a*;
Newmark, Sales, 25; *McClelland v. Scroggin*, 35 Neb., 536,
and cases cited.) There is in the contract here involved no
suggestion whatever of the relation of vendor and vendee,

or of facts from which Yoder could acquire title to the twine in controversy upon the happening of contingencies near or remote. He was, in short, what the contract implies, a mere factor holding the property on consignment for the benefit of his principal. As a factor, his relation was that of a trustee for the plaintiff with respect to the twine in his possession. It follows that said property was not subject to execution or attachment in satisfaction of his debts, and that in allowing the defendants below to recover the district court erred, for which the judgment must be reversed and the cause remanded for further proceedings therein not inconsistent with this opinion.

REVERSED AND REMANDED.