Mack v. Drummond Tobacco Co.

ELIZABETH MACK ET AL. V. DRUMMOND TOBACCO COMPANY.

FILED MAY 6, 1896.    No. 6530.

Sales: CONSTRUCTION OF CONTRACT: AGENCY. An agreement between a manufacturing company and a merchant provided: (*a.*) That the merchant was thereby appointed agent of the manufacturing company to sell its tobacco at such prices as it might direct. (*b.*) The merchant was to be paid a certain commission on all sales made if he sold the tobacco furnished at the price fixed by the manufacturer. If he sold it for less he was to have no commission. (*c.*) The merchant guarantied the payment of all tobacco shipped him by the manufacturer. (*d.*) The merchant was to execute and deliver his promissory notes, due in sixty days, for all tobacco furnished him by the manufacturer. *Held*, (1) Not a contract of agency for the sale of the manufacturer's goods by the merchant on commission, but a contract of sale; (2) that tobacco furnished the merchant under this contract, upon his giving his notes therefor, became his property.

ERROR from the district court of Douglas county. Tried below before DOANE, J.

*Thomas D. Crane* and *Duffie, Crane & Van Dusen,* for plaintiffs in error.

*G. W. Shields* and *Curtis & Shields, contra.*

RAGAN, C.

In August, 1889, G. H. Mack & Co. were tobacco dealers in the city of Omaha, Nebraska, and the Drummond Tobacco Company were tobacco dealers in the city of St. Louis, Missouri. On said date said parties entered into an agreement, in words and figures as follows:

"*G. H. Mack & Co., Omaha, Nebraska:* We hereby appoint you our agent to sell our tobacco at such prices as we may require and direct by our price cards as issued from time to time. Your compensation, until changed by us, inclusive of insurance and all other expenses, will be six cents per pound on sales of Natural Leaf and Five A, and three cents per pound on sales of Horseshoe, J. T., and all other of our brands, provided you have not sold or otherwise parted with our tobacco at less than our prices; but your compensation may be increased at any time by us, and will always be uniform to our agents. In consideration of the above compensation you must warrant that every shipment made to you will be paid for. To make good your above warranty, we require you to send us your sixty-day note or acceptance for the amount of each invoice shipped to you, but if you are willing to make us advances in cash of the amount of any shipment, we will allow you, if remitted within ten days after shipment, two per cent for such cash as additional compensation, the advances to be entirely at the risk of your reimbursing yourselves out of the goods so shipped —you to insure all goods shipped in order to protect your above warranty or any cash advances made. We will settle with you every sixty days, but we will not pay you any compensation if you sell our goods at less

than our prices. We reserve the right to terminate this agency at any time at our option.

"DRUMMOND TOBACCO CO.,

"Per JOHN N. DRUMMOND, *Vice Pres.*

"The above terms for the sale of Drummond Tobacco Company's goods are accepted.

"G. H. MACK & CO.

"Omaha, August 9, '89."

In accordance with the provisions of this contract the Drummond Tobacco Company shipped a quantity of tobacco to Mack & Co., and the latter executed and delivered their promissory notes, due in sixty days, to the tobacco company for the amount of the goods shipped. Mack & Co. pledged their tobacco stock, including certain tobacco which they had received under the contract above mentioned from the Drummond Tobacco Company, to certain of their creditors by chattel mortgages. The creditors took possession of the property pledged, and the Drummond Tobacco Company brought this, an action in replevin, against the mortgagees to recover the tobacco which it had shipped to Mack & Co. under the contract quoted above. The tobacco company had a verdict and judgment, and the mortgagees have prosecuted to this court a petition in error.

That the mortgages executed by Mack & Co. were made in good faith to secure debts owing by them to the several mortgagees is not a disputed question in this case. There are several assignments of error argued in the brief of counsel for the plaintiffs in error, but as we have reached the conclusion that the judgment under review is not supported by any evidence and is contrary to the law of the case, these errors will not be specifically considered. The sole question in the case is whether Mack & Co. were the owners of the tobacco received from the Drummond Tobacco Company under the contract quoted above and mortgaged to the plaintiffs in error, or whether such tobacco was the property of the Drummond Tobacco Company and was held by Mack & Co. as agents.

In *Fish v. Benedict*, 74 N. Y., 613, one Norton had given a written order to Fish Bros. for certain farm wagons at a certain price per wagon. The order further provided that Norton should pay for all wagons shipped him by Fish Bros. as soon as sold, and if sold on time he would indorse and forward the notes, with interest, and keep the wagons received under cover and insured, and that if any wagons remained unsold for twelve months after their receipt he would pay for the same. It was insisted that this order made Norton agent of Fish Bros. for the sale of the wagons shipped to him under such order, but the court of appeals held: "That the paper was an order for a purchase by the Nortons, and a sale by the plaintiffs, and was not a creation of an agency to sell on commission; that the title to the wagons was transferred to the Nortons and plaintiffs [Fish Bros.] had no title or right of possession; and that the question as to the interpretation of the instrument was one of law only."

In *Kellam v. Brown*, 17 S. E. Rep. [N. Car.], 416, the contract provided: (1.) That Kellam would not sell his goods to another merchant in the town where Brown was in business. (2.) In consideration of this agreement on Kellam's part Brown agreed not to sell any spectacles or eye-glasses except the "Perfected Crystal Lenses" and other goods manufactured by Kellam. (3.) Brown agreed to keep on hand $100 worth of such spectacles and eye-glasses. (4.) Brown agreed not to sell the spectacles at less than a price established by Kellam. (5.) By the contract first signed Brown ordered $100 worth of Kellam's goods. One-fifth of this amount was to be paid August 1, 1891, and a like sum on the first day of each month thereafter until full payment of the $100. (6.) All future goods ordered by Brown under the contract were to be paid for in sixty days from date of their receipt. It was insisted that this contract or agreement between Kellam and Brown was one of agency; that Brown was the agent of Kellam and that the goods shipped to Brown under the contract by Kellam remained the property of

Kellam, but the supreme court of North Carolina held: "The agreement between the parties is not such, as is contended by defendant, that it would constitute the defendant a factor or commission merchant,—the agent of the plaintiffs for the sale of the goods mentioned,— but clearly contemplates a sale."

In *Aspinwall Mfg. Co. v. Johnson*, 56 N. W. Rep. [Mich.], 932, the agreement recited: (1.) That the manufacturing company had appointed Johnson agent for the sale of a potato planter in certain territory. (2.) Johnson hereby orders of the manufacturing company one Aspinwall Potato Planter, $65, to be paid for in four months after May 1, 1891. (3.) Johnson agreed to give his notes for all goods shipped to him under the contract by the manufacturing company when requested by it. The supreme court of Michigan, in construing this contract, said: "The order of the goods payable in four months after May 1, 1891, with the promise to give a note whenever requested, makes this a contract of purchase. The fact that the contract contains other undertakings does not change the character of this. The defendant secured to himself the right to sell these goods and to purchase at certain prices. In consideration he agreed to make an effort to sell the plaintiff's machines, but it requires the defendant to become the purchaser of such goods as he orders."

In *Peoria Mfg. Co. v. Lyons*, 38 N. E. Rep. [Ill.], 661, the contract between the manufacturing company and Lyons recited: (1.) The manufacturing company agreed to deliver to Lyons such farm wagons, plows, and buggies as he might order on commission for the manufacturing company. (2.) Lyons agreed to sell the goods received at retail prices, the difference between which and the manufacturer's price was to constitute his compensation or commission for making the sale. (3.) In case Lyons sold the wagons on credit and took notes for them, he must guaranty the notes and turn them over to the manufacturing company, and if said notes were not paid at

30

maturity Lyons was to pay them. (4.) If Lyons sold the goods for cash he was to remit the cash to the manufacturing company. (5.) Lyons was to give the manufacturing company his notes for the invoice price of all the goods shipped to him when the goods were received, and any cash or notes remitted by Lyons to the manufacturing company as the proceeds of the sale of wagons were to be applied upon the notes which Lyons had given to the manufacturing company for the goods shipped him. The supreme court of Illinois, in construing this contract, held that goods shipped by the manufacturing company to Lyons in pursuance of this contract were sold to Lyons; that he did not hold such goods as the agent of the manufacturing company. To the same effect see *Braunn v. Keally*, 146 Pa. St., 519.

Construing the contract between the Drummond Tobacco Company and Mack & Co. in the light of these authorities, we reach the conclusion that Mack & Co. were not the agents of the Drummond Tobacco Company, and that the tobacco shipped by the Drummond Tobacco Company to Mack & Co. in pursuance of the terms of this contract was sold by the tobacco company to Mack & Co., and became, on its acceptance and the giving of the notes for its price, the latter's property. It is true the contract under consideration recites that the Drummond Tobacco Company does hereby appoint Mack & Co. its agent to sell its tobacco, but this language is not controlling. Not only were Mack & Co. required by the agreement to guaranty the payment of the price of all tobacco shipped them by the tobacco company, but in addition to that, on the receipt of a bill of goods they were required to execute to the tobacco company their notes for the amount of the goods shipped, due in sixty days. If this did not constitute a sale, it is difficult to understand what would constitute one. We have not overlooked the case of the *National Cordage Co. v. Sims*, 44 Neb., 148, but the contract construed in that case was very different from the one under consideration here,

and the conclusion reached here does not in any manner conflict with the decision in the case last referred to. The judgment of the district court is reversed and the cause remanded.

REVERSED AND REMANDED.