D. M. OSBORNE COMPANY ET AL. V. PLANO MANUFACTURING COMPANY.

FILED MAY 5, 1897.   No. 7130.

1. Conditional Sales.  The contract between the parties set out in the opinion and *held* not an absolute contract of bargain and sale, not a contract of agency, but a contract of conditional sale.

2. Joint Motion for New Trial: REVIEW.  A motion for a new trial is indivisible, and when made jointly by two or more parties, if it cannot be sustained as to all it must be overruled as to all.

3. Bona Fide Purchasers.  Section 26, chapter 32, Compiled Statutes, applicable to contracts of conditional sales, protects only good faith purchasers and judgment and attaching creditors without notice.

4. Conversion.  All are principals in conversion, and every person who knowingly aids and abets another in the conversion of the property of a third person is liable to such third person for the value of the property so converted.

ERROR from the district court of Lancaster county. Tried below before TIBBETS, J. *Affirmed.*

*A. R. Talbot* and *Stewart & Munger,* for plaintiffs in error.

*Stevens, Love & Cochran* and *George W. Cooper, contra.*

RAGAN, C.

In the district court of Lancaster county the Plano Manufacturing Company brought suit against the D. M. Osborne Company, C. L. Wyman, Henry Strathman, and George Yule, to recover the value of certain binding twine which the plaintiff alleged belonged to it, and which the defendants had converted to their own use. The plaintiff below had a verdict and judgment and the defendants below have prosecuted here a petition in error.

The property made the subject of this suit was delivered by the defendant in error to the plaintiff in error, C. L. Wyman, in pursuance of a written contract between said parties dated the 13th day of March, 1890. This contract was actually signed by one William Brown, but the evidence is undisputed that Brown, to use his own language, was a mere "figurehead" for Wyman, and that the latter was the party beneficially interested in the contract with the Plano Company. The contract, so far as material here, was as follows:

"The party of the first part [the Plano Manufacturing Company], for and in consideration of the covenants and agreements hereinafter contained to be kept and performed by the party of the second part [C. L. Wyman], has this day appointed the party of the second part its agent for the sale of twine at Elwood and vicinity.

"It is expressly understood and agreed by the party of the second part that an obligation is accepted by them or him to pay for all twine ordered in this contract and for any additional order that may be made and accepted by the party of the first part, the second party agreeing not to use the net proceeds of sales in his or their own business or for his or their own use, benefit, or accom-

modation, but to collect, receive, keep, and hold the same until paid over to the said party of the first part, solely as its agent and not otherwise, and for its sole use and benefit, and for the commission hereinafter specified the second party agrees to do all the business pertaining to selling said twine, to receive the same, pay freight charges, keep the same insured from loss by fire for at least two-thirds of the contract price therefor in the name of the first party, and pay all the taxes assessed on same while in his or their possession, keep the same well housed and in good order during the entire season or until sold, and to pay all damages to such property caused by neglect to properly insure, store, and care for the same.

"In furtherance of this contract the party of the first part agrees to furnish the party of the second part 1,500 pounds hemp at sixteen cents per pound, 1,500 pounds Sisal at seventeen cents per pound, to be shipped between January 1 and August 1, 1890, and allow and pay —— cents per pound commission on all twine sold when the proceeds are paid over, netting the party of the first part $11\frac{1}{2}$ cents per pound on hemp twine, $14\frac{1}{2}$ cents per pound on Sisal twine. The said twine to be sold for cash only and full settlement made in cash by said second party not later than September 1, 1890, unpaid balances to draw interest after September 1, 1890, at the rate of —— per cent per annum.

"It is further agreed and understood that until sold or settled for by the party of the second part the sole and exclusive ownership and title in and to all twine shipped to or held by the said party of the second part under this contract is and shall be and remain in the said party of the first part, and the same, or all net proceeds derived from the sale thereof, shall be at all times held for its account and subject to its order, the party of the first part reserving the right to rescind this contract if from fire or other cause it becomes impracticable for the first party to supply such twine," etc.

The evidence tends to show that in pursuance of the terms of this contract the Plano Manufacturing Company, in the spring of 1890, shipped to Wyman the amount of hemp and Sisal twine therein mentioned; that at the time of making this contract Wyman was handling the twine of the D. M. Osborne Company, and desiring to conceal from it that he was also handling the twine of the Plano Company, he caused the contract just quoted to be signed by Brown for him, Wyman; that about the last of August, 1890, Wyman was indebted to the D. M. Osborne Company for goods purchased of them, or for goods which he had sold of theirs and not accounted for; that at that time the plaintiff in error Yule was the agent of the D. M. Osborne Company; that at that time Wyman had on hand the twine sued for in this action, and which had been shipped to him in pursuance of the contract between him and the Plano Company quoted above. About this date Yule went to Elwood and, with knowledge or notice of the relation existing between Wyman and the Plano Manufacturing Company, induced Wyman to ship the twine sued for here to the plaintiff in error Strathman at Grand Island. Strathman executed his note to Yule for the value of the twine received and subsequently paid the note, and the proceeds, or a part of them at least, were applied by Yule or by Wyman to discharge the debt which the latter owed the D. M. Osborne Company; in other words, the evidence leads irresistibly to the conclusion that Yule and Wyman conspired together to pay a debt which Wyman owed the D. M. Osborne Company with the twine of the Plano Manufacturing Company then in Wyman's possession, and that the proceeds of said twine did go towards the discharging of said debt. It is to be remarked here that the evidence in the record is sufficient to show that Strathman, at the time he accepted this twine and gave his note for it, was in possession of sufficient facts to put him upon inquiry as to Yule and Wyman's title to the twine. As to the part taken in the transaction by the D. M. Osborne Com-

pany, it, being a corporation, could act only through, and did act through, its agent, Yule; but it received the benefit of his fraudulent transaction and has not repudiated it.

The plaintiffs in error contend that the contract quoted above was an unconditional contract of sale between the Plano Company and Wyman, and that when the twine was delivered by the Plano Company to Wyman it became his property, and that since they purchased the twine of Wyman, they are not liable in this action. They claim that *Mack v. Drummond Tobacco Co.*, 48 Neb., 397, controls the case at bar. On the other hand, the defendant in error claims that the contract quoted above was not a contract of sale, but one of agency merely; that Wyman simply held the twine as agent to sell for the Plano Company on commission; and that, having no title to the twine, if the plaintiffs in error bought from him, they took no title and are therefore liable. The defendant in error also claims that *National Cordage Co. v. Sims*, 44 Neb., 148, controls the construction of the contract in suit decisively in favor of its contention here. But neither of these cases is in point here. The contract construed in the National Cordage Company case was a contract of agency; it was not a contract of sale, either absolute or conditional. By the contract construed in that case the cordage company furnished its agent twine for sale at a specified commission. But the agent by the contract did not agree to pay for all twine received by him, but to endeavor, if possible, to sell all the twine received and to remit the proceeds of such sale. In the Drummond Tobacco case, Mack & Co., by the contract, guarantied the payment of all tobacco received under the contract, and executed their notes to the tobacco company for the invoice price of the goods received; and it was held that that contract was an absolute contract of bargain and sale, and that the title to all tobacco received by Mack & Co. under the contract vested in them upon its receipt. In the contract in the case at bar Wy-

man expressly agrees to pay for all twine shipped to him under the contract; to make a settlement with the company not later than September 1, 1890, and to pay interest on any balance then due; and the contract further expressly provides that the title and ownership of the twine shipped shall remain in the Plano Manufacturing Company until it is paid for. The contract under consideration, then, is not an absolute contract of bargain and sale. It is not a contract of agency. It is one of conditional sale. It is the species of contract contemplated by section 26, chapter 32, Compiled Statutes.

We have carefully examined all the complaints made by the plaintiffs in error as to the rulings of the district court. It would subserve no useful purpose here to review these assignments, as we have reached the conclusion that under no view of the case is there any error in the record prejudicial to Yule. All the plaintiffs in error made a joint motion for a new trial and have filed here a joint petition in error, and since the judgment of the district court is not erroneous as to Yule, it is good as to all the plaintiffs in error, the rule of this court being that a motion for a new trial is indivisible, and when made jointly by two or more parties, if it cannot be allowed as to all, it must be overruled as to all. (See *Minick v. Huff*, 41 Neb., 516, and cases there cited.) This conditional contract of sale between Wyman and the Plano Company was a valid one as between them, and the title to the property remained in the Plano Company until it was paid for. Wyman, therefore, had no title to the property, as he had not paid for it; and but for the provisions of the statute, said section 26, chapter 32, anyone acquiring this property from Wyman or a lien upon it would take no greater title than Wyman had. (*Campbell Printing Press & Mfg. Co. v. Dyer*, 46 Neb., 830.) But the statute has made an exception in favor of parties dealing with such property by which good-faith purchasers of property in the possession of a conditional vendee thereof, and the judgment and at-

taching creditors of such vendee without notice are protected. (*Peterson v. Tufts*, 34 Neb., 8.) Neither Yule, Strathman, nor the D. M. Osborne Company was a judgment or attaching creditor of Wyman, nor was either one of said parties a good-faith purchaser of this property from Wyman, as they and each of them knew, or were in possession of sufficient facts from which they should have known, that Wyman was a conditional vendee of the property and not the absolute owner of it. There are no accessories in conversion,—all are principals; and every person who knowingly aids and abets another in the conversion of the property of a third person renders himself liable to such third person for the value of the property so converted. Yule, with full knowledge that Wyman was a conditional vendee of the twine in suit, and that he had no title to this twine as against the Plano Company, assisted Wyman not only to convert this twine to his own use, but he did this for the express purpose of depriving the Plano Manufacturing Company of the twine or its proceeds. The judgment rendered against Yule is the only one that could have been rightly rendered under the evidence in the record, and the judgment against all the plaintiffs in error is therefore

AFFIRMED.