THE ALPHA CHECKROWER COMPANY, Appellant, v. DAVID BRADLEY & COMPANY.

Warranty: BREACH: *Damages.* Where machines are purchased of a manufacturer by a dealer, prospective profits are not a correct

measure of damages resulting from a breach of the warranty that the machines were well made; but, if the dealer has not made a seasonable tender of the machines, his damages are the difference between the value of the machines as warranted and their actual value, to which he may add any expense necessarily incurred because of the breach of warranty.

BREACH: *Evidence.* Evidence that corn cutters purchased by a general agent for the sale thereof were. returned by purchasers from him because they would not do the work intended and that because of the defects therein such agent was unable to sell the same, is admissible as tending to show the breach of a warranty that they were well made and finished, although it is not conclusive as to such breach.

TENDER. A tender back of machines purchased under a warranty for breach of such warranty must be made within a reasonable time.

*Pleading.* Therefore a counter claim setting up the purchase and receipt of certain machines under a warranty, the breach of the warranty, that relying on the contracts defendants incurred certain expenses, that by the breach he was deprived of a specific profit which he would have made on a resale of the machine, and that he is damaged in a specified amount, – does not state a cause of action.

IMPLIED WARRANTY. A warranty that corn cutters are fit for the purpose for which they are intended will be implied, if not expressed, where the sale is made under a warranty that they are "well made and finished."

Contract: SALE OR AGENCY. A contract by the manufacturer of corn cutters appointing a specified person as general western agent for the exclusive sale of the corn cutter and providing for his payment of a specified amount for each, subject to a discount for cash within thirty days, is a contract of sale and not of agency.

Appeal: TRIAL TO COURT: *Motion for new trial.* In a trial by the court the controlling question is the sufficiency of the evidence, and the judgment is a direct ruling upon that question. *Hence*, the sufficiency of the evidence may be reviewed on appeal, though no motion for new trial was made.

*Appeal from Pottawattamie District Court.*—HON. N. W. MACY, Judge.

WEDNESDAY, MAY 18, 1898.

ACTION to recover two thousand, five hundred dollars balance claimed to be due for one hundred and

ninety-six "Better Way corncutters," alleged to have been sold and delivered by the plaintiff to the defendant under a written contract set out in the petition. The defendants answered, admitting the execution of the written contract set out, the receipt of the corncutters, and denying every other allegation in the petition. For further defense, the defendant alleges that the corncutters were not well made nor well finished, and were of defective workmanship, and wholly unfit for the purpose of cutting corn. He further alleges as follows: "That the machines which the defendant received of the plaintiff, and placed upon the market, were returned by purchasers, because the said machines would not do the work for which they were intended." "(6) That the defendant did all in its power to put said machines upon the market and sell the same, but, because of the imperfections and defects therein, defendant was wholly unable to sell the same, except as shown in statement hereto attached, marked 'Exhibit A.' ". Defendant further alleges that he has on hand one hundred and twenty-one of the one hundred and ninety-six corncutters received from the plaintiff, and has so advised the plaintiff, "and has tendered same to the plaintiff, but plaintiff has refused to receive or accept the same." The defendant, by way of counterclaim, alleges the execution of said contract; that relying thereon, "and acting as the agent herein, as set forth in said contract," defendant did, at great cost and expense, proceed to dispose of said corncutters; that "they were not well made, nor of good material, nor properly finished, and failed absolutely to do the work for which they were made"; that "defendant was unable to sell but very few of the same, and a portion of those it did sell were returned to it by the purchasers, because said machines could not do the work represented"; that, under said contract, defendant was to

have a profit of five dollars; that, if said machines had been as represented, plaintiff would have been able to have sold the same, and made a profit thereon of nine hundred and eighty dollars, and that defendant has been damaged in the sum of one thousand dollars, for which judgment is asked. Plaintiff moved to strike the parts of the answer and the part of the counterclaim quoted above, which motion was overruled; whereupon plaintiff replied to the answer, and answered the counterclaim, denying that the corncutters were defective or wholly unfit for the purposes of corn cutting, also denying that the machines placed upon the market by defendant were returned by purchasers because they would not do the work for which they were intended, and alleging that said machines were doing the work for which they were intended; denying that defendant did all in its power to sell said machines, and were prevented by imperfections therein; denying that defendant has on hand the number of corncutters named in the answer, and denying that defendant has made a tender to plaintiff of said number, or of any number; further denying that defendant was the agent of plaintiff for the sale of said corncutters; denying that defendant, at great cost or expense, or otherwise, proceeded to dispose of the corncutters; denying that the corncutters were not well made, or that they failed to do the work for which they were intended; also denying that defendant was to have a profit of five dollars each, or that the contract fixes what the profit to said defendant should be; and denying that it has been damaged in any sum. Defendant, for amendment to its counterclaim, alleges that, under the contract said corncutters were to be shipped "nicely packed and bundled or crated in knocked-down condition, and ready for local shipment"; that they were shipped loose, improperly packed, and the parts unprotected. Plaintiff, in reply,

denied each and every allegation in said amendment. The case was tried to the court, and the court held that the burden was upon the defendant. Judgment was rendered that the plaintiff was entitled to have delivered to it at the warehouse of the defendant in the city of Council Bluffs, Iowa, the one hundred and twenty-one. Better Way corncutters which defendant then had in its possession, and the defendant was directed to deliver the same at said warehouse upon demand of the plaintiff. Judgment was rendered in favor of the defendant against the plaintiff, for costs. Plaintiff appeals.—*Reversed.*

*Mahoney & Smyth* and *J. M. Galvin* for appellant.

*Wright & Baldwin* for appellee.

GIVEN, J.—I.  Plaintiff brings this action against the defendant, as purchaser of the corncutters under this contract.  Defendant contends that he received the corn cutters as agent for plaintiff, but insists that, as to this case, it is immaterial whether he received them an agent or purchaser.  We think the questions discussed involve a construction of the contract in this respect.  The contract, after designating the plaintiff as party of the first part, and defendant as party of the second part, provides as follows: "That for one dollar in hand paid, and other valuable considerations, receipt of which is hereby acknowledged, said first party does hereby appoint said second party to be their general Western agents for the exclusive sale of the Better Way ear corncutter, Harry Willitts' patent, made by said first party, in all the territory worked by said second party, from their warehouse in Council Bluffs, Iowa, and described as follows:  The four western tiers of counties in Iowa, from south to

north, that part of South Dakota south of a line parellel with the line between Iowa and Minnesota from east to west, eastern Wyoming, all of Colorado north of the south line of Arapahoe county, and all of Nebraska, for the period of one year from the date of this contract. Prices and terms shall be as follows: For above-named corncutters, nicely packed, and bundled or crated in knocked-down condition, ready for local shipment, delivered f. o. b. cars at warehouse of said second party in Council Bluffs, $15 each, on four months' time, subject to a discount of 5 per cent. for cash within thirty days from receipt and checking of the goods. In consideration of the above-named price and terms, and for the further consideration that said first party agrees to send their representative, Mr. Graham, immediately into the territory above named, and take orders on bona fide sales of 50 cutters at $20 each, delivered at warehouse of said second party in Council Bluffs, said second party does place an order for one car load of cutters, not to exceed 100; and further agrees to canvass said territory faithfully with their travelers, and to rush the sale of said cutters as hard as possible; and further agrees to distribute all the printed matter said first party will furnish, which shall be a liberal supply; and first party also agrees to furnish electrotypes of machines so that second party may get up circulars of their own. It is further agreed by first party to allow said second party to advertise said machine in the Council Bluffs and Omaha Implement World, a paper published in Omaha, to the amount of $50, at their expense, and said second party will spend a like amount. It is further agreed by party of the first part to fill promptly all orders of said second party for as many machines as they are able to sell during the life of this contract, and said second party shall have the privilege of renewing this contract for a period of five additional years, at prices and terms

to be agreed upon at the close of the first year. Said
first party warrant their machines to be well made and
finished, and will replace free of charge any and all
parts that fail from defective workmanship or material,
and will carry a full line of repairs in the hands of said
second party, and for all sold they shall settle for at the
close of year, less a discount of 50 per cent. from their
list prices. It is further agreed that the sales made by
Mr. Graham of fifty machines shall be to parties of good
financial standing, such as David Bradley & Co. will
accept, and prices and terms shall be as favorable to
second party as those named in Exhibit A, hereto
attached."

This contract is with reference to a corncutter,
"Willitts' patent, made by said first party." We may
presume from this that the plaintiff had the sole right to
sell this machine in the territory designated, and there-
fore conclude that the provision appointing defendant
"general Western agents for the exclusive sale of the
corncutter" is equivalent to an agreement that author-
ity will not be given to any other than the defendant to
sell in that territory. The prices and terms of payment
preclude the idea of agency. Defendant is to pay fifteen
dollars each on four months' time, subject to a discount
of five per cent. for cash within thirty days from receipt
and checking of the goods. We think this provision
made the goods the property of the defendant immedi-
ately upon delivery. There is nothing in the contract
that defendant was to sell in the name of the plaintiff,
nor that the title to the corncutters should remain in
the plaintiff, and the warranty indicates that an agency
was not contemplated. In *Mack v. Tobacco Co.*, 48
Neb, 397 (67 N. W. Rep. 174), the agreement provided
that the merchant was appointed agent of the manu-
facturer to sell its tobacco at such prices as it might

direct. The merchant was to be paid a certain commission on sales made at the prices fixed by the manufacturer, but, if he sold for less he was to have no commission. The merchant guaranteed the payment of all tobacco shipped him by the manufacturer. He was to execute and deliver his promissory note, due in sixty days, for all tobacco furnished. This was held not to be a contract of agency for the sale of the goods on commission, but a contract of sale, and that tobacco furnished the merchant under this contract upon his giving his notes therefor became his property. A number of cases are cited in that opinion which support our conclusion that this is not a contract of agency, and that defendant took the corncutters as purchaser.

II. By the contract, plaintiff warrants the machines "to be well made and finished," and the defense is that they were not as warranted, and were wholly unfit for the purpose of cutting corn. Now, while it is true that the mere facts that machines were returned by purchasers because they would not do the work for which they were intended, and that, because of their defects, defendant was unable to sell the same, would not of themselves show a breach of the warranty, we think that such facts were admissible as having that tendency. Therefore, there was no error in overruling plaintiff's motion to strike from the answer. The same is true of the defendant's alleged inability to sell because of defects in the machines, as a ground for recovery under the counterclaim. We think plaintiff was not prejudiced by the overruling of the motion to strike.

III. Plaintiff's next contention is that the answer does not state a defense, nor the counterclaim a cause of action. The answer admits the receipt of the one hundred and ninety-six machines under the contract, and, as we have seen, they were received by defendant

as purchaser, at the agreed price of fifteen dollars for each machine. The defense is a breach of the warranty, and that defendant tendered back one hundred and twenty-one of the machines received. It is not alleged that this tender was made within a reasonable time, nor is it stated when it was made. The authorities are uniform in holding that a tender must be made within a reasonable time, to be available. The answer evidently omits an essential element of an effective tender in failing to show that it was made within a reasonable time. Thus viewed, the only defense set up in the answer is a breach of the warranty, and therefore we think the court erred in rendering judgment for the return of the one hundred and twenty-one machines.

Plaintiff contends that a cause of action is not stated in the counterclaim. It shows the written contract containing the warranty; the receipt of the one hundred and ninety-six machines; the breach of the warranty; that, relying upon the contract, defendant incurred certain expenses; that by the breach he is deprived of a profit of five dollars each which he would have made in the sale of the machines; and that he is damaged one thousand dollars. This counterclaim is evidently based upon the assumption that defendant was acting as agent of the plaintiff, but, as we have seen, he was a purchaser of the machines. As a purchaser his remedy for a breach of the warranty, in the absence of a tender within a reasonable time, is the difference in the value of the machines as warranted and as they were, and expense necessarily incurred as a direct consequence of a breach of the warranty. The contract does not fix a profit of five dollars each as a measure of damages that should follow a breach of the warranty, and prospective profits are not a correct measure of defendant's damage. It does not

directly appear whether or not the court allowed anything on the counterclaim, but, as the pleadings show that plaintiff was entitled to recover some amount on account of the machines retained, and tendered back, we assume that the court must have allowed some amount on the counterclaim. Treating the defendant as a purchaser, we think the counterclaim does not state a cause of action, and that it was error to allow the defendant anything thereon.

IV. Plaintiff contends that there was no breach of the warranty, for that the warranty was that the machines were "well made and finished." The contract was made after inspection of a sample machine, and plaintiff insists that, if the machines furnished were made and finished as this sample was made and finished, there was no breach of the warranty, and insists that the evidence so shows. The warranty expressed is not that the cutters were made and finished as per sample, but that they were well made and finished. If it should be said that this is not a warranty that the cutters were fit for the purpose for which they were intended, we think that such a warranty must be implied. In *Blackmore v. Fairbanks, Morse & Co.*, 79 Iowa, 289, this court said as follows: "The rule in regard to an implied warranty of quality has been stated as follows: 'So far as an ascertained specific chattel, already existing, and which the buyer has inspected, is concerned, the rule of *caveat emptor* admits of no exception by implied warranty of quality. But, where a chattel is to be made or supplied to the order of the purchaser, there is an implied warranty that it is reasonably fit for the purpose for which it is ordinarily used, or that it is fit for the special purpose intended by the buyer, if that purpose be communicated to the vendor when the order is given.' 2 Benjamin, Sales, section 966. See, also, *King v. Gottschalk*, 21

Iowa, 513.  In this case, plaintiff had not inspected the property ordered, and had no opportunity to do so, when the order was given.  On the other hand, defendant knew the use for which the property was intended.  Therefore, unless excluded by the terms of the order, there was an implied warranty that the property was fit for the desired use, and that it was in merchantable condition.  Appellant contends that the order, in effect, contains an express warranty that the property shall be in good order; hence that implied warranties must be excluded.  It is true that, as a general rule, no warranty will be implied where the parties have expressed in words the warranty by which they mean to be bound (2 Benjamin, Sales, section 1002); but the rule does not extend to the exclusion of warranties implied by law, where they are not excluded by the terms of the contract.  Thus, an express warranty of title does not exclude an implied warranty of quality,"—citing cases.  It is further said:  "A warranty will not be implied in conflict with the expressed terms of the agreement; but there is no conflict of that kind in this case."  The same is true of the case at bar, and we think that it should be implied if it is not expressed, that the cutters were reasonably fit for the purpose for which they were intended.

Counsel discuss at some length the competency and sufficiency of the evidence to sustain the judgment, especially upon the question of defendant's damages.  Defendant insists that, as there was no motion for a new trial, the question of the sufficiency of the evidence was not brought to the attention of the trial court, and therefore cannot be reviewed on appeal.  The trial being to the court, the controlling question was the sufficiency of the evidence, and in the judgment we have a direct ruling of the court upon that question.  Had the trial been to a jury, it would have

been otherwise. What we have said indicates our views upon the measure of damages and the competency of testimony to support the claim, and as, for reasons already stated, a re-trial may follow, we will not discuss the evidence nor pass upon its sufficiency. As we view the contract and the case under it, the defendant is sued as purchaser of the machines, and as purchaser defends, upon the ground of a breach of the warranty, and for that breach asks damages. For the errors pointed out, the judgment of the district court is REVERSED.