MARY E. BARRETT, APPELLANT, *v.* CHARLES BARRETT AND XARIFA J. FAILING, RESPONDENTS.

DIVORCE—CONVEYANCE MADE AFTER CAUSE OF DIVORCE SUIT MAY BE ATTACKED. The right of a divorced wife, at whose suit the divorce was granted, to question the validity of a conveyance of real property by the husband, dates from the time when the decree of divorce was entered; and such decree, when entered, arms the wife with the right to question the validity of any conveyance of real property, made by the husband after the cause of the suit of divorce arose.

PARENT AND CHILD—WHEN CONTRACT TO PAY FOR SERVICES NOT IMPLIED. The law will not imply an agreement on the part of a parent to pay for the ordinary services, as housekeeper, of his daughter, who is living in his family.

APPEAL from Multnomah County.

The complaint alleges that on the 25th of September, 1866, the plaintiff was the wife of the defendant, Charles Barrett; that the former was then a resident of San Francisco, California, and the latter of Portland, Oregon; that on that day, plaintiff began a suit for divorce against said

defendant, in the District Court of the State of California for the Fifteenth Judicial District; that said defendant Barrett filed his answer therein on the 5th of June, 1867; that on the 13th of April, 1867, said defendant Barrett was ordered, by said court, forthwith to pay, as plaintiff's counsel fees in said suit, the sum of three hundred dollars, and one hundred and twenty-five dollars for her alimony, and to thereafter pay, monthly, on the thirteenth of each month, during the pendency of the suit, or until the further order of the court, one hundred and twenty-five dollars for such alimony; that on the 18th of April, 1870, plaintiff obtained a decree of divorce, decreeing that defendant Barrett should pay five thousand five hundred and four dollars and thirty cents, in gold coin, for alimony and counsel fees then due, and the additional sum of one hundred and twenty-five dollars per month, alimony, so long as plaintiff remained single; that on the 8th of December, 1870, she brought an action in the Circuit Court of this State for Multnomah County, on this decree, and on the 18th of February, 1871, recovered judgment in said action against said Charles Barrett for five thousand nine hundred and twenty-one dollars and thirty cents in coin, and for forty-six dollars and thirty cents, costs; that on the 14th of March, 1871, execution was issued on this judgment, which was returned unsatisfied, and that no part of said judgment has been paid; that at the time of the commencement of the divorce suit, and for a long time thereafter, said Charles Barrett was the owner in fee of the west half of lots 7 and 8, in block 63, in the city of Portland, Oregon, of the value of about five thousand dollars; that on or about the 4th of February, 1868, said Barrett, combining and confederating with the defendant, Xarifa Jane Failing, then Xarifa Jane Barrett, who is his daughter, and was residing with him, with intent to defraud the plaintiff of her demand against him, fraudulently made a pretended conveyance of said real property to said Xarifa Jane, by a deed of that date; that said conveyance was without any consideration; that the said property is held by Xarifa Jane for the use and benefit of the said Charles Barrett, upon secret trust between them, solely

to defraud plaintiff, and that such transfer was not followed by an immediate and continued change of possession.

Each defendant answered separately, and each denies all of the allegations of the complaint which tend to show that the conveyance of Charles Barrett to Xarifa Jane was fraudulent, or that said Charles has any interest in the property, or that it is held in trust for him; and each alleges that such conveyance was for a full and valuable consideration, which was paid.

*W. W. Thayer, W. H. Effinger, and Page & Yocum,* for Appellant.

*William Strong and John Catlin,* for Respondents.

By the Court, BURNETT, J.:

The first question presented by the appeal is, whether the plaintiff is in a situation to inquire into the validity of the deed made by Charles Barrett to his daughter Xarifa Jane, on the 4th of February, 1868. Was she a creditor, or did she have a lawful suit or demand against said Charles Barrett, at that time, within the meaning of § 51, Chapter 6 of Miscellaneous Laws? It was conceded in the argument, that any woman who has obtained a divorce from her husband may question the validity of any conveyance made by him after the cause of suit arose; but it was insisted that the right of suit must have existed in this State at the time the deed complained of was made, or the plaintiff cannot be benefited thereby; and, as this suit for divorce between the plaintiff and Charles Barrett was pending in another State at the time the deed in question was made, that she could not have had a right of suit here, and is therefore debarred from the right of questioning the validity of the deed. It seems from the authorities that the right of a woman to question a conveyance, made by her husband under the circumstances mentioned, can never arise until the decree of divorce, which establishes the fact that she had a cause of suit against her husband, and fixes the time when the cause of suit arose, is made; and whenever that decree is made, by a court of competent jurisdiction, it arms the injured

wife with power to call in question the validity of any conveyance made by her husband after the cause of suit arose. It will not be claimed that, if Barrett had become indebted in San Francisco to the amount of five thousand dollars, and had given his note, payable in five years, he could the next year have made a conveyance that could not be inquired into by his California creditor, although such creditor would have no right of action, either in California or Oregon, for four years; but when he once obtained a judgment on his note, he could then go back and inquire into every conveyance made by his debtor after the debt was contracted, and, if he saw fit to sue him in California, and then sue the judgment over here, it would make no difference in its effect when once obtained.

In the case of *Bouslough* v. *Bouslough* (68 Penn. S. R. 499), treating upon this question, the court uses this language: "There is no reason why a wife, whose husband has deserted her and refused to perform the duty of maintenance, or who by cruel treatment has compelled her to leave his house and commence proceedings for a divorce and maintenance, should not be viewed as a quasi creditor in relation to the alimony which the law awards to her. So long as she is receiving maintenance, and is under his wing, as it were, she is bound by his acts as to his personal estate; but when she is compelled to become a suitor for her rights, her relation becomes adverse and that of a creditor in fact, and she is not to be balked of her dues by his fraud. But it is argued that this cannot exist until a decree be made for the alimony. But why is her case before the decree not as much within the spirit and intent of the statute of the 13th Elizabeth as that of a subsequent creditor, who was intended to be affected by a deed made before his debt was contracted, but in view of it? It is not doubted that a voluntary conveyance, made in contemplation of future debts to be contracted, and with a view to defeat them, is within the spirit of that statute, though not within its letter."

In the case of *Livermore* v. *Boutelle & Tenny* (11 Gray, 217), it is held that a conveyance of real estate by a husband after he has committed adultery, though before his wife

has filed a libel for divorce, is void, if made to prevent her from recovering such alimony as the court may decree her.

These cases establish the doctrine that the right of the wife to question conveyances made by the husband dates from the time the cause of suit arose, and not from the date of the decree; and, in fact, as has been stated, it was conceded in the argument that such was the law. But it was claimed by counsel for the respondent that in this case the appellant cannot question any conveyance made by Charles Barrett prior to the 18th of April, 1870, that being the date of the decree of divorce and for alimony; and to sustain this position the cases of *Nary* v. *Nary* (41 Vermont, 180), and *Barber* v. *Barber* (21 How. U. S. 582), are cited. In the case of *Nary* v. *Nary* it appears that the plaintiff sued her husband for a divorce, and pending the suit obtained an order requiring him to pay her one hundred dollars as temporary alimony; that within two weeks after this order was entered, and before any payment was made and while the suit was pending, the husband died; that thereafter she presented this order for temporary alimony as a claim against his estate, and it was disallowed, on the ground that the death of the husband discontinued the suit for divorce, and thereby the order for temporary alimony became inoperative, especially as no steps had been taken to carry the order into effect prior to his death. The courts have the power to require the defendant in a divorce suit, in proper cases, to support the plaintiff and contribute to the expenses of the litigation during the pendency thereof, though it may establish the fact that the plaintiff is not entitled to relief and has no claim upon the defendant or his property. And if the plaintiff here had obtained nothing more than an order for temporary alimony, she would occupy an entirely different position to what she does with a decree of divorce in her favor, for the sum of $5,504 alimony. In the case in 21st Howard the court held that where a woman had obtained a divorce from bed and board of the husband, under the New York statute, that though the decree did not sever the marital relation, she could afterwards sue her

husband in Wisconsin, on that judgment, for the amount of the alimony.

Having reached the conclusion that the plaintiff has a right to inquire into the conveyance made by Charles Barrett to Xarifa Jane Barrett on the 4th of February, 1868, the next and more difficult question is, whether that conveyance is fraudulent. Charles Barrett and Xarifa J. both testify that the conveyance in question was *bona fide* and for full value; but when we consider that when Charles Barrett is questioned directly on that subject his answers are evasive, indefinite and entirely unsatisfactory, we are forced to the conclusion that so far as he is concerned, his principal object in making the conveyance to his daughter was to place the property beyond the reach of any judgment for alimony his wife might obtain against him in the suits then pending in California. So far as Xarifa Jane is connected with the transaction, it would appear that she had full knowledge of the suit pending against her father, but that her principal object was to secure herself for services rendered to her father prior to that time. Hence, we conclude that while this conveyance is not absolutely void as against the plaintiff, yet the suspicious circumstances as to the adequacy of the consideration and fairness of the transaction require that it should be set aside so far as it is voluntary; and this leads us to inquire, what amount was *bona fide* due from Charles Barrett to Xarifa Jane, on the 4th of February, 1868. The court below found that "the said defendant Xarifa J., on the said 4th day of February, 1868, had a *bona fide* lawful claim and demand against said defendant Charles Barrett for the sum of three thousand seven hundred and sixty-five dollars, which she was then entitled to receive and recover of him in an action at law." We do not think this view of the case is correct. In the first place, the referee finds that there was no express contract between Charles Barrett and Xarifa for any kind of services prior to November 3d, 1866, and then only for services as housekeeper, at thirty dollars per month; but he allows her for services as housekeeper, on an implied contract, from June 3d, 1863. This we think was error. If she was entitled to services as

housekeeper, it must be upon an express contract. The law will not imply an agreement on the part of a parent to pay his daughter, who is living in his family, wages for ordinary services such as housekeeping. (15 Barb. 444; 33 N. H. 581.)

It is claimed by counsel for respondent that the evidence shows that there was an express contract on the part of Charles Barrett to pay Xarifa J. wages as housekeeper, from the time she arrived in June, 1863. It is true that both the defendants so testify; but these statements, viewed in the light of Xarifa's voluntary admissions, made long after that time, that she was working for her board and clothes, and the subsequent actions of both defendants, fully warranted the referee in finding that no such agreement had been made. The testimony of Charles Barrett, in connection with the ledger account introduced by him, tended to show that there was an express agreement to pay Xarifa thirty dollars per month wages as a housekeeper, from December 3, 1866, and the referee was justified in so finding. And this amount would appear from the account to have been paid. The referee further found that Xarifa had rendered services for Charles Barrett from June 3, 1864, to February 4, 1868, for which there was an implied contract on the part of Charles Barrett to pay, and that they were reasonably worth the sum of thirty dollars per month. We think this finding was correct, as the evidence tends to show that this employment was not in the ordinary course of services from child to parent in the household duties of the parent's family; and further, that they were rendered by Xarifa with the expectation that she would receive pay. On the whole evidence we are of the opinion that two thousand two hundred dollars is the full amount of the claim that Xarifa had against Charles Barrett on the 4th of February, 1868, and that the consideration expressed in the deed approximates the correct amount; and this view of the case is strengthened by the testimony of Charles Barrett as well as by that of Judge Strong. In answer to Interrogatory 44, as to what the true consideration for the deed was, Barrett says: "She paid me fifty

dollars in this way, she lent me fifty dollars on interest previous to this; that fifty dollars and interest, whatever it was, I do not remember, was turned over.as part payment; the remainder was paid by salary, *calculated up to that date*, due to her for services.." In answer to Interrogatory 45, as to how much salary was due her at the time of making the deed, he says: "I don't remember, but it was as much or more than the property came to."

Judge Strong says, in answer to Interrogatory 4, in his examination: "From what was stated to me by the parties at the time the deed was executed, the consideration was the compensation due Xarifa from Charles Barrett for services rendered him by her for some years previously. I know of no other consideration." Allowing Xarifa Jane two hundred and eighty-five dollars, for the balance due her on the express contract for services as housekeeper, and two thousand two hundred dollars, on an implied contract for services in the store, the consideration to the amount of two thousand four hundred and eighty-five dollars should be held good. Taking the property to be of the value of four thousand five hundred dollars, at the time it was conveyed, it would follow that the plaintiff herein would have a lien for the sum of two thousand and fifteen 'dollars and ten per cent. interest thereon from the 18th of February, 1871, the time her judgment was obtained in this State.

The decree of the court below will be modified in accordance with this opinion.