Decided 17 July, 1906.

**HEYWOOD v. DOERNBECHER MFG. CO.**

86 Pac. 357, 87 Pac. 530.

SALE OR AGENCY—NATURE OF CONTRACT.

1. A contract whereby defendant stipulated to sell its entire manufactured product to plaintiff as its sole agent in a territory mentioned, such product being designated in a schedule and list of prices, the contract providing that a schedule of such prices based on the present list should be made out showing the net price on each article of the entire line, the schedule remaining in force until such time as a new price list issued, a new schedule to be then made, "the schedule referred to to be attached and made a part of this contract," and "list prices to be low enough at all times to enable [plaintiff] to meet competition in the aforesaid territory," and a discount of 15 per cent from factory list prices to be allowed plaintiff, constituted a sale, and not an agency.

ATTORNEY—EFFECT OF ADMISSIONS—FORCE OF DEDUCTIONS BY TRIAL COURT IN ITS OPINION.

2. Under Section 158, B. & C. Comp., providing that on the trial of an issue of fact by the court its written decision shall state the facts found and conclusions of law separately, without argument or reason therefor, and that the court may deliver any argument or reason in support of such decision, either orally or written, separately therefrom, and file the same with the clerk, where there was a contention as to whether plaintiffs' cause of action was based entirely on an original contract or on the contract as amended by the parties, a deduction by the court in its opinion that plaintiff's counsel claimed that such cause of action was based entirely on the original contract, though not equivalent to a positive statement to that effect, is entitled to consideration as an assertion of a solemn admission by one of the parties.

ATTORNEY AND CLIENT—ADMISSIONS—EFFECT.

3. The admissions of an attorney, made within the scope of his authority and during the continuance of his employment, bind his client to the same extent as a stipulation.

CONTRACT—EFFECT OF CONSTRUCTION BY THE PARTIES.

4. In cases of ambiguity the contemporaneous construction of a contract by the parties thereto is persuasive, but where the meaning is clear,

it is the duty of the court to so declare, without reference to the opinion of the parties.

CONSTRUCTION OF CONTRACT.

5. The contract in suit here being one of sale and not of agency, it manifestly could not be construed to guarantee any rate of profit.

CONTRACT—PLEADING.

6. In an action on a contract, the complaint construed, and *held* not to aver an agreement for an allowance by defendant to plaintiff of certain sums as freight on shipments of furniture sold to plaintiff.

AMENDMENT—ENLARGING SCOPE OF PLEADING—REVERSIBLE ERROR.

7. An amendment to a complaint, after the submission of the cause, enlarging the scope of the complaint, constitutes reversible error, testimony tending to establish the facts so added in the amended complaint having been admitted over defendant's objection and exception.

TAXATION OF COSTS ON APPEAL.

8. The statute regulating the taxing of costs (B. & C. Comp. § 568) does not apply to the practice in the supreme court, and there is no statute now (November, 1906) on that subject.

OBJECTIONS TO COSTS ON APPEAL—HEARING BY CLERK.

9. In the absence of a statute regulating the taxing of costs and disbursements on appeal, and no rule of court on that subject having been promulgated, now in November, 1906, the court approves the practice of having all such questions submitted first to the clerk of the supreme court as standing referee, and reviewing his rulings on motion.

PRACTICE IN TAXING COSTS ON APPEAL—VERIFICATION.

10. Although the statutes regulating the taxing of costs in the trial courts (B. & C. Comp. §§ 568, 569) do not apply to the supreme court, still the requirement therein that objections must be verified is a desirable one and is hereby adopted as a matter of practice on appeal.

A claim for costs is sufficiently verified under Section 568. B. & C. Comp., where it is accompanied by a separate affidavit explaining the claim.

REVIEW OF COSTS CLAIMED IN TRIAL COURT.

11. A claim for the expense of copying the stenographer's notes of a trial to be used by the judge in settling the bill of exceptions is an item connected with the trial and must be passed upon by the lower court and appealed before the supreme court has jurisdiction to consider it.

From Multnomah: ALFRED F. SEARS, JR., and ARTHUR L. FRAZER, Judges.

Statement by MR. JUSTICE MOORE.

This is a law action by Heywood Brothers & Wakefield Co., a private corporation, against the Doernbecher Manufacturing Co. The cause of action here involved is the second of those set out in the complaint, and is the particular cause relied on to recover certain sums of money as discounts and freight alleged to have been allowed and paid by the plaintiff on defendant's account. The complaint alleges the incorporation

of the respective parties, and states that the plaintiff is a whole-
sale dealer in, and the defendant a manufacturer of, furniture
at Portland, and that they entered into a contract whereby the
former secured the exclusive right for two years from April 3,
1902, to sell in Óregon, Washington, British Columbia, Idaho,
Alaska and Montana the latter's manufactured products, all
of which the plaintiff stipulates to buy.  The contract, a copy
of which is set out, specified that the defendant would supply
furniture at the regular factory list prices, less a discount of
15 per cent, a schedule of which should be attached to the
agreement, and that the plaintiff would pay such prices for all
shipments made to it, on receipt of the invoice.  The agree-
ment contains the following clause:

"(7) A schedule of said prices, based on the present list, to
be made out, showing the net prices on each article of the
entire line, such schedule to remain in force until such time
as a new price list shall be issued, at which time a new schedule
is to be made out, the schedule referred to to be attached and
made a part of this contract.  The list prices to be low enough
at all times to enable the party of the second part [the plain-
tiff herein] to meet competition in the aforesaid territory."

The complaint further adds in substance, that prior to the
making of the contract, the defendant and other manufactur-
ers of furniture had agreed among themselves to allow the
retail trade, in the territory specified, a cash discount of 2
per cent, and it was stipulated between the plaintiff and the
defendant that such deductions should be borne by the former,
thus reducing its profits to 13 per cent, which abatement was
made by the plaintiff during the time the contract remained in
force; that after the contract was signed, the defendant and
other manufacturers of furniture and competitors agreed that
the factory list prices of their goods should be reduced by
allowing freights on shipments to various parts of such terri-
tory, and such price list was diminished in other respects by
direction to plaintiff from the defendant which was thereupon
required by the terms of the contract to modify the schedule
attached to the agreement and to make out a new list, based on
such reductions, but it failed to do so; that the plaintiff was

compelled to allow such reductions from the schedule price to the trade in the territory mentioned, to conform to the new factory prices and to such changes as were made by the defendant, to enable the plaintiff to meet competition, which discounts and remissions were made with the defendant's knowledge; that the plaintiff paid 85 per cent of the original factory list prices for all furniture received prior to January 20, 1904, amounting to $244,217.58, when the defendant refused to deliver any more goods; that upon the receipt of and payment for furniture, plaintiff was unable to determine the proper deductions to be allowed, but upon ascertaining such amounts it immediately gave the defendant a statement thereof and charged the same to it to conform to the new factory prices and to clause 7 of the contract, to all of which the defendant consented, "and agreed to pay the same"; that the amount of such discounts and reductions is $5,599.76 which the plaintiff overpaid the defendant, under the terms of the contract, no part of which has been repaid, except $1,266.80.

The answer denies the material allegations of the complaint, sets up a counterclaim of $2,277.25 for two car loads of furniture for which it had received no payment, states that the only schedule of prices adopted by the defendant after the contract was signed, was made and attached to the agreement April 25, 1903, and that all payments made by the plaintiff were in pursuance of the original and amended price lists. The averments of new matter in the answer are denied in the reply, and, the cause having been tried without the intervention of a jury, testimony was admitted over objection and exception, to the effect that the original contract had been modified by subsequent agreements of the parties, and when the cause was submitted an amendment was permitted to be made to the complaint of the clause "and agreed to pay the same," as hereinbefore indicated. The court found that the plaintiff was entitled to the sum of $4,947.51 as discounts, etc., less the counterclaim stated, and gave judgment for the remainder, $2,670.26, and also rendered further judgments in plaintiff's

favor for the sum of $932.16 and $209.81 on two other causes
of action, respectively, and the defendant appeals.

                                        REVERSED.

For appellant there was a brief with oral arguments by *Mr.
A. King Wilson* and *Mr. William Torbert Muir.*

For respondent there was a brief over the names of *Cake &
Cake* and *Ore L. Price,* with an oral argument by *Mr. Harry
M. Cake.*

MR. JUSTICE MOORE delivered the opinion of the court.

It is conceded by the defendant's counsel that the plaintiff
was entitled to the sums for which judgment was rendered on
the fourth and fifth causes of action; but it is insisted that the
court erred in permitting the complaint to be amended after
immaterial testimony had been admitted over objection and
exception, and also in refusing to grant a judgment of nonsuit
on the second cause of action, for the recovery of discounts,
etc., and that, as the defendant was entitled to a counterclaim
of $2,277.25, judgment should have been rendered in its favor
and against the plaintiff for $1,135.28, in excess of the sums
so admitted to be due. It is argued that, though the contract
in question contains a stipulation for the reciprocal purchase
and sale of furniture, the second cause of action is based on the
theory that the agreement created an agency, whereby the
plaintiff was authorized to sell the goods delivered to it by the
defendant at any price it might demand and to allow such
discounts and reductions as it chose to grant to its customers,
retaining a commission of 13 per cent, and that the defendant
was bound by such action. The court filed with its findings
an opinion to the effect that the contract of the parties mani-
fested a sale and did not create an agency; that, though the
plaintiff's counsel asserted at the trial that the second cause
of action was founded on the original contract, the averment
in the complaint of an agreement to allow extra discounts and
special freights was equivalent to an allegation of the making
of new agreements modifying the original contract, and, as

such, stated a good cause of action before amendment; and that the further averment in the complaint that these special agreements were made in accordance with the original contract and amounted to a change in the list price, should be treated as surplusage.

1. An examination of the contract referred to convinces us that it was the intention of the parties that the absolute property in the furniture was to be transferred from the defendant by the delivery of the goods to and the acceptance thereof by the plaintiff, which was to pay for and keep them, thereby creating, as the lower court properly held, a sale and not an agency: 24 Am. & Eng. Enc. Law (2 ed.), 1027. Because the defendant stipulated to sell the entire manufactured products to the plaintiff, which was designated in the schedule of furniture and the list of prices issued by the defendant as its sole agent in the territory mentioned, did not change the character of the transaction. Thus, a contract by the manufacturers of corn cutters appointing a person as general Western agent for the exclusive sale of the machine and providing for the payment of a certain amount for each, subject to a discount for cash, was held to be a contract of sale and not of agency: *Alpha Checkrower Co.* v. *Bradley*, 105 Iowa, 537 (75 N. W. 369). To the same effect see *Granite Roofing Co.* v. *Casler*, 82 Mich. 466 (46 N. W. 728); *Mack* v. *Drummond Tobacco Co.* 48 Neb. 397 (67 N. W. 174, 58 Am. St. Rep. 691).

2. The deduction by the court in its opinion that the plaintiff's counsel claimed that the second cause of action was based entirely on the original contract, though probably not equivalent to a statement to that effect contained in the bill of exceptions, is nevertheless entitled to consideration as an assertion of a solemn admission by one of the parties: B. & C. Comp. § 158.

3. The admissions of an attorney, made within the scope of his authority and during the continuance of his employment, bind his client to the same extent as a stipulation: 3 Am. & Eng. Enc. Law. (2 ed.), 327. This rule is not invoked to

charge the plaintiff with an acknowledgment of a fact preju-
dicial to its interests, but as tending to show the theory of its
counsel as to the basis of the second cause of action.

The plaintiff's manager testified that the corporation which
he represented was the agent for the defendant and as such
was not authorized to· sell the furniture delivered to it above
or below the stipulated prices, for which service it was entitled
to 13 per cent for handling the goods.   We think it was the
theory of the plaintiff and of its counsel that the contract of
the parties created an agency, and that the averment in the
complaint that plaintiff, on ascertaining the amount of the
discounts and reductions, immediately gave a statement thereof
and charged the same to the defendant, to all of which it
assented, confirms this view.   If the plaintiff was such agent
and sold the ·furniture at a discount or paid the freight on the
shipment of goods and the defendant, upon notice thereof,
assented thereto, as alleged, such acquiescence was a ratification
which rendered it liable to repay the sums so expended, without
an averment of an agreement to pay the same.   The fact that
the clause "and agreed to pay the same" was omitted from the
complaint, but incorporated therein by amendment after the
cause was submitted, tends to corroborate the belief that the
second cause of action was founded on the theory of an agency.
The defendant's manager evidently thought the contract cre-
ated an agency, for in a letter which he wrote the plaintiff
November 18, 1903, he says:

"We note that you have made quite a material advance on the
price of chiffoniers, and would like to inquire if you have been
selling them at the list price, as you now have it?   If so, we
trust you will figure out the difference coming to us on them."

4. In *Railroad Co.* v. *Trimble,* 77 U. S. 367 (10 Wall., 19 L.
Ed. 948), it was held that where there was doubt as to the
proper meaning of an instrument, the construction which the
parties to it have themselves put upon it is entitled to great
consideration; but where its meaning is clear, an erroneous con-
struction of it by them will not control its effect.   To the same
effect see also *Davis* v. *Shafer* (C. C.), 50 Fed. 764.   We think

the contract under consideration admits of no doubt as to its construction, and that it stipulated for a sale of furniture and not for the creation of an agency for handling the goods. The complaint was probably prepared, however, in deference to the views of the parties in respect to the terms of their agreement and on the assumption that the construction that they had placed upon it would be controlling. The declaration, therefore, of the plaintiff's counsel that the second cause of action was founded wholly on the original contract would seem to be decisive of the controversy.

5. The paragraph of the complaint which the lower court considered tantamount to an averment of the making of a new agreement, modifying the terms of the original contract, is as follows:

"(11) That thereafter and after said contract had been entered into as aforesaid, the defendant as a manufacturer of the furniture referred to in the said contract and other manufacturers of a like kind of furniture and competitors of plaintiff entered into an agreement whereby said factory list price was reduced by the allowance of freights on various shipments to various parts of said territory, and said factory list price was reduced after said contract had been entered into in other respects by direction of defendant to plaintiff, and under and by virtue of said clause above mentioned, defendant was required to modify said schedule of prices attached to said contract and make out a new schedule based upon said factory list prices as the same were reduced as aforesaid, but defendant failed to modify said schedule attached to said contract or make out a new schedule in accordance with said reductions."

We concur in the opinion of the lower court that the contract did not guaranty to the plaintiff any rate per cent of profit on the sale of the furniture. The property in the goods being vested, on the delivery thereof, in the plaintiff, it could have resold the furniture at such prices as the demand for and the competition in the trade would warrant. The agreement of the parties was subject to the construction placed upon it by the lower court, as evidenced by its opinion, from which we take the following excerpt:

"According to the terms of this original contract the defend-

ant had a right to insist that plaintiff pay it the list price in force at any particular time, less 15 per cent as agreed upon. If the list price was too high, the plaintiff could have insisted upon its revision; but, as long as it stood, plaintiff was bound by it. The mere agreement by the parties that a larger discount should be allowed to a particular purchaser or in a particular town or district did not amount to a change in the list price. Such agreement when made was not in accordance with the terms of the original contract, but was a new agreement, or a modification of the original contract."

6. Construing paragraph 11 of the complaint in the light of the rule thus declared as applicable to the contract, there is no averment that an agreement had ever been entered into between the plaintiff and the defendant whereby the payment of any sums as freights was to have been allowed on the shipment of furniture to any part of the specified territory. It would seem that by invoking clause 7 of the original contract, plaintiff's counsel, in the paragraph of the complaint adverted to, deduced the conclusion that by virtue of the agreement alleged to have been entered into between the defendant and other manufacturers of furniture and competitors of the plaintiff, etc., the factory list prices were reduced by the allowance of freights. It appears from the exhibits which accompany the bill of exceptions that the sum demanded by and evidently allowed the plaintiff in the judgment on account of the freights paid by it is $573.75. In our opinion, there is no legal averment on which this part of the judgment can rest. It will be remembered that after the cause was submitted the complaint was amended so as to allege that the defendant agreed to reimburse the plaintiff for the sums so paid and allowed by it, as evidenced by statements thereof.

7. This averment enlarged the scope of the complaint, so far at least as it related to the freights, and as the testimony tending to establish such facts was admitted over objection and exception, an error was committed in permitting the complaint to be amended in the respect mentioned: 1 Ency. Pl. & Pr. 585; *Mendenhall* v. *Harrisburg Water Co.*, 27 Or. 38 (39 Pac. 399). The allegation of the reduction of the factory list

prices in other respects by direction of the defendant to the plaintiff might, under a very liberal rule of pleading prevailing in this state (B. & C. Comp. § 85), support the view entertained by the trial court, that it was equivalent to an allegation of a modification of the original contract. Such change, however, could only be made by special agreement of the parties and not by invoking clause 7 of the contract as creating a liability.

In consequence of the error committed, to which attention has been called, we believe justice would be promoted by reversing the judgment and remanding the cause for such further proceedings as may be necessary; and hence an order to that effect will be entered.                                REVERSED.

Decided 21 August, 1906.
ON MOTION FOR REHEARING.

MR. JUSTICE MOORE delivered the opinion.

A petition for a rehearing having been filed by defendant's counsel, it is asserted therein that judgment should have been rendered in this court in favor of their client for the sum of $1,135.28, and that the cause should not be remanded for a new trial, thereby imposing additional expense upon the parties. The question now suggested was argued when the cause was submitted, in answering which it is stated in the opinion: "We believe justice would be promoted by reversing the judgment and remanding the cause for such further proceedings as may be necessary." In order to recover any of the freights claimed to have been paid by the plaintiff, it will be necessary to secure an amendment of the complaint, and, an alteration in this respect being imperative, it is quite probable that the court will, upon application, allow the complaint further to be amended, so as to aver a modification of the original contract. We adhere to the former opinion, and hence the petition will be denied.

REVERSED: REHEARING DENIED.

Decided 21 November, 1906.
ON MOTION TO RETAX COSTS.

MR. JUSTICE MOORE delivered the opinion of the court.

This is a motion assailing the sufficiency of objections to a cost bill and to strike from the files findings made thereon. The judgment herein having been reversed, a cost bill was filed which contained a claim for the sum of $100 paid by the defendant to the official stenographer for transcribing the notes of the testimony given at the trial. The plaintiff's counsel filed an objection to such claim on the ground that a stipulation had been entered into by the parties to the effect that the cause should be tried in this court on an abstract of record, and that the original bill of exceptions was not to be copied, but that the agreement did not provide for the payment of the expenses of transcribing such notes. The objections so filed were not verified, but an affidavit, made by plaintiff's counsel, was filed at the same time, wherein it was stated that the costs of extending the notes were divided and the defendant's part thereof was the sum so paid, and that the testimony taken was used at the argument in the lower court. Based on the issues thus made, the clerk of this court made findings of fact respecting the several items in the cost bill, but disallowed the claim for transcribing the notes, whereupon defendant's counsel filed the motion hereinbefore mentioned and an affidavit showing that it was necessary for the trial judge to examine the extended transcript of the notes because of the objections of the plaintiff's counsel to the bill of exceptions, and that the sum of $100 was requisite and incurred in preparing the cause for appeal.

8. It is contended by defendant's counsel that the clerk of this court has no authority to make findings of fact on contested items of a cost bill or to determine the matters relating thereto, which duty devolves on the court, and hence the findings complained of should be stricken from the files. The statute originally declared that costs and disbursements should be taxed and allowed by the clerk (B. & C. Comp. § 568), and also provided that, when objections were made to a claim for costs, the party seeking to recover the sums so demanded was required, within a given time, to file with the clerk a verified statement, showing the materiality and necessity of each item

(48th Or.—24)

so objected to, whereupon the clerk was required to pass upon the same and indorse upon, or append to, the verified statement the charges allowed or disallowed, and that the party aggrieved by the decision of the clerk in the allowance of the costs and disbursements might have such action reviewed by the judge in a summary manner, by filing a motion in the cause to have the costs and disbursements retaxed: B. & C. Comp. § 569. These sections have been amended so as to require the costs and disbursements to be taxed and allowed by the court or judge, but if no objections are made to the items of the cost bill the clerk is required to enter the same as a part of the judgment. If objections duly verified are filed, however, the court or judge must, without a jury, proceed to hear the issues involved, and in doing so may take relevant and competent testimony produced by either party, and thereupon determine the matter. Each party may except to the ruling of the court or judge upon the questions of law arising at such hearing and the same shall be embodied in a bill of exceptions and an appeal may be taken from such allowance and taxation: Laws 1903, p. 209. A perusal of the amendment referred to will show that its provisions are applicable only to the trial court. It may also well be doubted if the original statute was ever intended to regulate the manner of taxing costs and disbursements incurred on appeal. This court, however, has generally followed the statute thus prescribed and the practice in this respect has acquired the binding force of a tacit rule.

9. As the consideration of causes on appeal demand the time of the court, the taxation of contested claims for items of cost and disbursements has heretofore been submitted to the clerk as a referee for his determination in the first instance, subject to review upon motion by a party aggrieved by his allowance or rejection. As this practice facilitates the dispatch of business, and as the statute now in force does not apply to this court, we shall adhere to such procedure, though no formal rule to that effect has been adopted. The findings made by the clerk upon the objections to the cost bill will, therefore, not be

stricken from the files, but his action in rejecting the claim for transcribing the notes of the testimony, having been challenged by a motion, will be reviewed.

10. As a preliminary matter, the sufficiency of the objections will first be considered. The statute declares that they must be verified: Laws 1903, pp. 209, 210. The objections interposed failed technically to comply with this requirement, but there was filed at the same time a supplemental affidavit which explained the item controverted, and this, in our opinion, was a sufficient obedience to the provision of the statute.

11. The charge of $100 for transcribing the stenographer's notes of the testimony was an expense incurred in preparing the cause for presentation to the lower court for argument, and the taxation thereof is a matter with which this court cannot intermeddle or even review unless the question has been regularly brought here by an appeal, which has not been done in this instance. The clerk, therefore, very properly disallowed the claim, and, this being so, the motion to retax is denied.

Reversed: Rehearing Denied.
Motion to Retax Costs Denied.