**ELLIS v. ELLIS et al.**

No. 1298.

Third Division,

Jan. 4, 1933.

374

378

380

Donohoe & Dimond, of Valdez, for plaintiff and defendants I. E. Bush and E. A. Moore.

Cole & Dolby, of Seattle, Wash.. and J. L. Reed, of Seward; for defendant Gertrude E. Ellis.

CLEGG, District Judge.

From the foregoing facts, the court holds that the defendant Gertrude E. Ellis has failed ·to establish a cause for the dissolution of the marriage contract at her instance,

either on the ground of cruel and inhuman treatment or on the ground of failure of the plaintiff, Herman E. Ellis, to provide for her adequate maintenance and support during one year prior to the filing of her cross-action for divorce.

It is elementary that the duty devolves upon the husband to provide and furnish the home, and that it is the duty of the wife to occupy the home and to reside there unless the husband acquiesces or consents to her residence elsewhere or unless her husband's mistreatment justifies her in leaving and remaining away from the home, and it is clear from the entire testimony that the plaintiff did not do either.

No complaint is made by the wife of the unsuitability of the home in Alaska which her husband, Herman E. Ellis, furnished, and no adequate cause is shown in all the testimony of the wife or her witnesses justifying her willful and continuous desertion of him. Even if it were true that she was compelled to live on charity at the hands of her relatives up to the time of her sale of the Olympia home, she was then entitled to save and to use at least a portion of that money to unite her again with her husband in Alaska, if she had not been able theretofore to secure from the relatives who she claims supported her, or from other sources on her own account, the money needed for transportation purposes. Her use of this entire amount of money, $1,400, received from the sale of the home in Olympia, under the circumstances shown by the evidence, without reserving a dollar for the use of her husband, knowing his necessitous condition at that time and its likely continuance, was a callous performance on her part, and her failure to give a specific account, either at that time or at the trial, of the use to which she devoted the money so received from such sale, except in general terms, seems to indicate that the use made of the money was not altogether fully disclosed with that frankness so desirable in equity.

Under all the circumstances of the previous and then condition of the parties, as disclosed by the evidence, the

husband, Ellis, was entitled, under the law, to a share of such money, notwithstanding her vague and unsatisfactory testimony that theretofore she had been compelled to go in debt and to live largely on the charity of her relatives, and that the sum of $1,400 therefore would not "go far."

It is not even stated how long she lived on the charity of her relatives, or where, or which relatives; nor is her testimony satisfactory as to the method by which she disposed of the furniture and furnishings of the home to a sister in order to recompense her for allowing her, the defendant Ellis, to remain with such sister. It is shown in the evidence that the cost of such furniture and furnishings was approximately the sum of $1,500, and the evidence fails to disclose specifically and precisely what services were rendered and for what length of time by the sister of the defendant Ellis in her behalf to be commensurate with such value, allowing for a reasonable depreciation.

Any debts incurred lawfully by the wife outside of Alaska were equally the obligation of the husband, and the payment thereof a duty imposed on him by the law, and he had an equal right with the wife to say and to decide what debts should be discharged and when.

The evidence discloses that the plaintiff wrote to the defendant Ellis and asked her why she did not return to Alaska when she sold the Olympia property and received the money therefor. She answered, "I wonder." Her failure to return at said time caused plaintiff to realize finally and fully that she had no intention of returning and would never return, a fact which he apparently had refused to believe up to that time. The court cannot say that, under all the circumstances, plaintiff was not justified in such conclusion. No consent of the husband to the wife's absence can be implied where the situation, as here, is shown to be such that he could neither control, improve, abate, nor terminate its continuance.

The plaintiff undoubtedly yielded consent to the wife's residence outside of Alaska up to the spring of the year

1925 and until the graduation of her son from high school, but upon the happening of that event in the spring of 1925, as disclosed by the evidence, he no longer consented but continually inquired of the defendant wife when she was intending to come back to Alaska.

Her refusal to return after the sale of the Olympia home, either in the fall of 1925 or the spring of 1926, justifies the conclusion that the progress of her son's education was a mere pretext for her absence theretofore, and that her actual desertion of her husband began, as alleged, in 1924. In any event, the evidence discloses that, when said Olympia property was sold, the wife deliberately chose to remain outside of Alaska with her own relatives rather than return to her home in Alaska with the plaintiff and husband, Herman E. Ellis.

■ It is alleged in plaintiff's complaint that plaintiff and defendant Ellis have not resided together or lived together since the month of August, 1924, and this allegation is admitted by the second amended answer of the defendant Ellis. The facts in evidence show such desertion of the plaintiff by the defendant Ellis to have been continuous, uninterrupted, willful, and without adequate cause since August, 1924, and, further, that both grounds alleged by the defendant Ellis as a basis for the dissolution of the bonds of matrimony now existing fail to be substantiated by the whole evidence and are contrary thereto.

■ The law seems to be clear that, where a wife can establish her right to a divorce, she is also entitled to have set aside any conveyance previously made by her husband with a fraudulent intention of depriving her of her right to alimony, but the cause of suit in her behalf, according to the authorities, must have arisen prior to the time of the alleged conveyance.

■ In the case now before the court, the court has already determined that no cause of action exists in favor of the wife against the husband, but does exist on the part of

the husband, and the wife is not entitled, therefore, to challenge or attack the alleged fraudulent conveyance set up in the third affirmative defense contained in the second amended answer of the defendant Ellis.

In 19 C.J., 318, § 734, it is stated as follows: "A judgment or decree awarding alimony to the wife is sufficient to establish her rights as a creditor of the husband to impeach a conveyance made by him with intent to defraud her of the alimony"—and a variety of cases are cited in note 99 to this text.

It is further stated in said section as follows: "A conveyance made by the husband in anticipation of the wife's libel for divorce, and to prevent her from recovering alimony, is fraudulent, and may be set aside unless the purchaser took without notice and for value"—also citing a large number of cases from other jurisdictions.

In the Oregon case of Barrett v. Barrett, 5 Or. 411, 413, the opinion of the court, in part, is as follows: "It seems from the authorities that the right of a woman to question a conveyance, made by her husband under the circumstances mentioned, can never arise until the decree of divorce, which establishes the fact that she had a cause of suit against her husband, and fixes the time when the cause of suit arose, is made; and whenever that decree is made, by a court of competent jurisdiction, it arms the injured wife with power to call in question the validity of any conveyance made by her husband after the cause of suit arose."

It is clear, then, that if, by the decree to be entered in this case in accordance with this opinion, no cause of suit is found to have arisen in behalf of the wife entitling her to a divorce, then she is in no position to question the validity or bona fides of the transfer in 1926 by the plaintiff of nearly all of his Alaskan property to his sisters, defendants Bush and Moore, but, as the validity of this transfer by deed has been so rigidly contested on behalf of the defendant Ellis and as rigidly upheld by the plaintiff in this suit, the court

nevertheless proceeds to a discussion of the evidence on this question.

By the correspondence which was conducted between the plaintiff and the defendant Ellis, it is clear that the plaintiff, in the fall of 1925, was broken in spirit by the failure of capital to be attracted to his various mining properties, that he had always held the strong idea that the Cliff Mine at some date would be rejuvenated into life, and that capital would be attracted for the second time to its development. This was an obsession with him and a delusion, as has been demonstrated by the lapse of time. But in the fall of 1925 he had grown discouraged. He was apprehensive of the due date of the note and mortgage then becoming due to Wagner, and, apparently, he could see no way out enabling him to lift this mortgage at the appointed time and keep his property clear. He had already received what I consider large advances from his sister, defendant Bush, in the nature of loans and had grown weary of the hope of help from the public generally to discharge these.

He was still optimistic as to what the Cliff Mine would produce, and on April 11, 1926, according to Defendant's Exhibit 7 introduced in evidence, he wrote his sister, the defendant Bush, fully in regard to that matter and suggested that she or "the folks" put some of their Florida profits into Alaska mining property, meaning his. He does not say directly his relatives or his sisters, and it is not clear whom he means when he says "among the folks" in his letter, but I think it is fairly reasonable to conclude that he meant any of the people who had formerly been engaged in the "pool in real estate," the result of which he inquired about. There is nothing in the evidence to indicate who these people were. He does say, however: "Would you like to try an investment in Alaska Mining property? Or if you couldn't handle it alone maybe you could form a pool among the folks to put some of their Florida profits into." Defendant's Exhibit 7.

I am inclined to think that he must have been well aware of the fact of the financial condition of his sister whom he was addressing in this letter and he felt satisfied that she could not handle it alone, and therefore suggested that maybe she could form a pool among the folks to whom he or she had previously referred.

It is undisputed in the testimony that the sum of $7,500, paid by the sisters of plaintiff as part of the purchase price, was borrowed by the defendant Moore for that purpose.

"I can guarantee at least 100% in two years. I need $10,000.00. $6,500.00 in cash to meet a mortgage on the Cliff Mine due May 19th 1926 of $6,000.00 & $500.00 for some minor items. About $2,500.00 principal & interest that I owe you which would leave about $1,000.00 which could be paid anytime that was convenient in a year. That would be a total of $7,500.00 beside what I now owe you.

"I will give you a deed & bill of sale to the Cliff Mine & three other groups of claims that I hold.. Two groups on the mountain this side of the Cliff & the American Eagle group at Tiekell. The lowest valuation of the four groups should total at least $300,000.00." Defendant's Exhibit 7.

He further says in the postscript, dated April 20th, to the letter (Defendant's Exhibit 7): "If this matter will inconvenience you in the least do not bother with it as I have explained above I will have two years to redeem & will manage some way."

I think it is fairly susceptible, from this portion of the letter which covers this particular subject that the writer, plaintiff, Herman E. Ellis, felt he was likely to inconvenience his sister, and that he had no feeling of certainty whatever that she would be able to entertain the proposition. This letter is relied upon implicitly by both sides, who have stated to the court that it governs the intentions of the plaintiff, and that, according to it, the court must decide whether or not the plaintiff was acting fraudulently or in good faith in making and consummating the sale of

388

his Alaskan properties to his sisters, defendants Bush and Moore, jointly.

In the arguments addressed to the court on the conclusion of the evidence, the attorney for plaintiff and defendants Bush and Moore, in covering the entire case in his argument by agreement of counsel, referred to the fact that the defendant Ellis, in view of the evidence produced, which was uncontradicted in any manner with reference to the cash payment made by his sisters, the defendants Bush and Moore, to the plaintiff as the purchase price of this property, together with the cancellation of the loan due his sister I. E. Bush, did not tender or offer to repay the total amount of the purchase price shown by the evidence to have been paid to the plaintiff, and that therefore her failure to do so violated the cardinal rules of equity that "He who comes into a court of equity must come with clean hands,". and that "He who seeks equity must do equity."

Thereafter the leading counsel for the defendant Gertrude E. Ellis, in answer to this argument, addressing the court in his final argument, stated that the reason they had not tendered or offered to repay the actual purchase price of the property was due to the fact that until the trial they were unable to determine what the actual facts were, but now that they had been exposed he and his client were willing that the court in its decree should consider the amount of the purchase price of $10,000 and interest, and any legitimate upkeep expended by the defendants Bush and Moore upon the property since the purchase as a first lien or mortgage upon the property, and that the interest of the plaintiff and of the defendant Ellis should be decreed as an undivided one-half interest, and, further, that, since he had heard the proofs, he absolved and acquitted the defendants Bush and Moore of any actual or intended fraud in the transaction, but merely criticized and censured them for withholding the facts or concealing them after the transaction. occurred.

In view of this admission of counsel, which tends to show the theory of the defendant Gertrude E. Ellis, upon which she now seeks to recover, and of her counsel upon the actual trial (Heywood v. Doernbecher, etc., Co., 48 Or. 359, 365, 86 P. 357, 87 P. 530; 2 R.C.L. 990, § 69; 6 C.J. 649, § 157), it is seen that the theory of the defendant Ellis on the trial is different from and a departure from the allegations of her third affirmative defense contained in her second amended answer, and it is an attempt on the part of counsel to shift this alleged cause of action from a charge against the plaintiff of making a fraudulent conveyance of his property to one which embraces only the idea of having this deed declared a mortgage.

■■ Neither the pleadings nor the proofs, nor the law would justify the court in yielding to the suggestions of counsel for the defendant Ellis in argument. The charge against the plaintiff must be proved as laid. It is charged that the plaintiff conspired and confederated with defendants Bush and Moore to defraud the defendant Ellis by this transaction. Failure to prove this charge warrants a finding in favor of the plaintiff on this cause. He denied it, as appears from the files and records before the court on a preliminary application of the defendant Ellis for alimony and attorneys' fees pendente lite, the defendant I. E. Bush denied it when her deposition was taken on the 25th day of June, 1931, and the defendant E. A. Moore denied it when her deposition was taken on the 12th day of August, 1931. The public records were also open to inspection by defendant Ellis at all times. It now comes too late on the part of the defendant Ellis, at the closing hours of the trial, to claim before the court that the pleadings on her part are not in proper form to meet the established proof because of her ignorance of the facts, and that the court should render a decree for the defendant Ellis in opposition to the facts pleaded and in accordance with some different theory unsupported by any pleaded facts. A court of equity has no such power or authority. "Equity follows the law."

In this connection it is important that the court consider the charge that the transfer by the plaintiff to his sisters, defendants Bush and Moore, was made for a grossly inadequate consideration. The court knows, understands, and applies the rule of equity requiring closest scrutiny be given transfers of property effected between a brother and his sisters when challenged or assailed by a creditor or supposed creditor.

All of the properties transferred at the time of the transfer, to wit, June 10, 1926, and at the time of the proposal therefor, to wit, April 11, 1926, were unpatented lode mining claims in the territory of Alaska, none of which, with the exception of what is known as the Cliff Mine, so far as the evidence discloses, had ever been developed to any extent or had ever produced any money, and no testimony is offered on the part of the defendant Ellis to show the value or supposed value of either of said properties. The only testimony on this subject is with reference to whatever property embraces the Cliff Mine, and even this fact is not disclosed by the evidence. Such testimony is not the sworn testimony of any witness, even of the plaintiff, subject to cross-examination.

In order for the court to find that the transfer made by the plaintiff to his sisters was for a grossly inadequate consideration, some testimony at least should be offered to the court by which he could compare the value of the purchase price paid for the transfer and the value of the properties transferred. In order to do this, the court must of necessity be advised what veins each of the properties contain, or are supposed to contain, their extent and value, whether any assays had ever been made from any of them, the cost of working the same and extracting the mineral values, if any, the cost of installing the necessary machinery so to do, the possibilities of any of said claims for light and power, and the accessibility of any of them to ready means of transportation. The court ought to be advised by some competent testimony as to the real and actual market value

of said lode mining claims or of their speculative value at the time of the transfer.

So far as the evidence discloses, all of the claims, with the exception of those containing the Cliff Mine, may be put in the class of "wild cat" mining claims, except for the sole value placed upon them by the plaintiff alone, in the options upon the Cliff Mine introduced in evidence, options that were offered and rejected by plaintiff, options taken but allowed to lapse, letters of the plaintiff to his sister, defendant Bush, and letters passing from the plaintiff to his wife. The supposed values placed by the plaintiff are based upon no statements of fact from which the court would be justified in any degree in concluding that the value of either or any of the properties, either actual, marketable or potential, was as stated by him.

I consider it the duty of the defendant Ellis to have produced such testimony if this contention was to be seriously urged, and that her failure to produce any reliable testimony on this subject prohibits the court from making any finding that the price paid by the defendants Bush and Moore for the mining claims of the plaintiff, included in the deed of transfer from him to them, was in any way incommensurate or disproportionate to the real value of said properties.

Take the statement of the plaintiff in his letter of April 11, 1926, to his sister, the defendant Bush (Defendant's Exhibit 7), in which he stated that he could guarantee in two years a return of 100 per cent. on their investment to her or to the folks who would put up the money required, as he stated, to secure a deed from him.

Now we know at the time of the trial, after the lapse of nearly seven years, so far as the testimony in the case discloses, that the total amount of money produced and paid to the defendant Bush was $30, and the total amount of money paid to the defendant Moore was $90, derived from said property. In addition to this, said defendants Bush and Moore have been responsible during all this period for the

performance of annual assessment work on a large number of these claims; and, no doubt, at this time, if the defendants Bush and Moore have been rightly advised, they have long since abandoned and returned to the government domain all of the properties with the exception of the Cliff Mine.

It is clear to the court that this cause arises on the part of the defendant Ellis mainly from two erroneous assumptions:

First. That, as the wife of the plaintiff, she was entitled to an interest in any interests of his in unpatented mining claims owned by him in Alaska. This is wholly inaccurate, as announced in the decision of the United States Supreme Court in the case of Black v. Elkhorn Mining Company, 163 U.S. 445, 16 S.Ct. 1101, 41 L.Ed. 221.

Second. That the properties of the plaintiff in Alaska were rich beyond the dreams of avarice, all of which remain unproved by any evidence tendered.

In view of the state of the whole evidence, the court must, and does, find that the total purchase price paid by the defendants Bush and Moore for the properties transferred to them by the plaintiff was in no way incommensurate or inadequate for the properties so purchased, but was, in fact, a price fair and reasonable under all the circumstances disclosed by the evidence, if not excessive.

This discloses of the entire case on behalf of the defendant Ellis, except that the pleadings and the evidence show that the plaintiff purchased and owned for some time following the marriage certain desert land and unimproved farm lands in Grant and Jefferson counties, state of Washington, and the evidence is wholly indefinite, inadequate, and vague as to whether or not he still owns the same or whether they have been encumbered and sold for arrearages of taxes, assessments, or other encumbrances and thereby lost to the plaintiff.

If plaintiff still retains the legal or equitable title to any of said property, it is my opinion that, under the laws of the state of Washington, such property would constitute community property, and that therefore, in the event of divorce of either of the parties, each party would be entitled to a one-half portion thereof. The state of the evidence not revealing the exact status of this property or any of it, and the court being of the opinion that in all probability, if the title is not entirely lost, it is heavily encumbered in the manner above indicated, and that to award merely a half interest to the wife would be wholly inadequate by reason of such encumbrances, the court is of the opinion that all of said property should be awarded to the defendant Gertrude E. Ellis in its entirety, and the decree herein should require the plaintiff, Herman E. Ellis, to transfer his title, legal as well as equitable, to all of said property in Grant and Jefferson counties, state of Washington, within ten days after the entry of judgment to the defendant, Gertrude E. Ellis.

Findings of fact, conclusions of law, and decree in accordance herewith may be submitted.